IN RE APPLICATION OF EDERER ET AL., APPELLANTS, *v.* BOARD OF ZONING APPEALS, APPELLEE.

144

(No. 24183—Decided May 2, 1969.)

Common Pleas Court of Medina County.

*Mr. James W. Foreman,* for appellants.
*Mr. Joseph E. Foreman,* city solicitor, for appellee.

WINTER, J. Before proceeding with the disposition of these questions it appears timely to direct appellee's attention to a matter raised by counsel for the appellants in the hearing before the Board of Zoning Appeals and also noted, quite properly, on page 9 of appellant's brief filed herein, namely, the matter of the master plan.

While the question of a master plan and the effect of its existence or nonexistence on the constitutionality of the City Planning and Zoning Ordinance, is not before this court in the instant case, it appears that the city would be well advised to investigate this matter further as soon as is conveniently possibly. As appellant's counsel indicated to the Board of Zoning Appeals, zoning regulations are valid only if they are in accord with a comprehensive plan.

Coming now to the specific issues raised in this appeal, the court finds that all matters are now properly before it and that the court has jurisdiction herein.

Chapter 1337 of the City Planning and Zoning Ordinance, known as the C-2 Section, relates to the Central Commercial District of the City of Wadsworth. Section 1337.01 of this chapter declares the chapter's purpose, and as such is no more than a preamble, setting forth the legislative intent and purpose for the enactments that thereafter follow. While the purpose clause, so-called, of a statute or ordinance may be, and frequently is, used in determining legislative intent for the purposes of judicial interpretation and construction, it is not the law, and accordingly, such clause, as in the instant case, may not be read or construed as a limitation or restriction on the land use within a district or area created by zoning classification.

Furthermore, the court is of the opinion that appellee

herein has failed to support the contention that the proposed land use would be inconsistent with "* * * a principal downtown shopping area of regional importance, where concentrations of comparison shopping facilities, financial and business services, and amusement or recreation may be found in quantity." (Quoting, in part, from Section 1337.01.) On the contrary, this court is of the opinion that the proposed use might well lend itself to the spirit and intent of the aforesaid purpose clause, and it so finds.

Section 1337.02 of the City Planning and Zoning Ordinance, entitled "Permitted Uses," sets forth a long list of various uses that will be permitted in the city's C-2 Central Commercial District. Item (i) reads as follows:

"Preparation and processing of food and drink to be retailed on the premises, including bakery, delicatessen, meat market, confectionery, restaurant, ice cream parlor, soda fountain, tavern, but excluding drive-ins."

As is evidenced from the record (appellant's exhibit E, Minutes of Planning Commission Meeting October 21, 1968), the question as the Planning Commission then saw it (third full paragraph, page 2), was:

"The question is—is it (the Red Barn) a drive-in or a restaurant? If this was in a C-3 or C-4 area (Intensive Commercial District or Highway Interchange Commercial District), there wouldn't be any question, but for the downtown area we have to base it on whether it is a restaurant or a drive-in—does it meet the zoning and land use and thoroughfare plan for the central business district?"

The latest declaration in Ohio distinguishing a restaurant from a drive-in is set forth by Justice Brown in the case of *State, ex rel. Spiccia, v. Abate,* 2 Ohio St. 2d 129, decided May 5, 1965, as follows:

"What constitutes a 'restaurant' as opposed to a 'drive-in restaurant' for the purpose of determining the permitted use of property under a zoning classification in which those terms are not otherwise defined is determined by considering the common and ordinary meaning

of those terms, liberally construing them in favor of the permitted use so as not to extend the restrictions of the ordinance to any limitation of use not therein clearly prescribed.''

Section 11.74, page 431, Anderson's text entitled, *American Law of Zoning*, an authoritative work on the subject, in referring to the *Spiccia case, supra,* says:

''The term restaurant has been construed to include a place where food is prepared and served inside to be consumed on tables, although it may be taken out and consumed in cars.''

In Section 12.11, page 527, the term ''Restaurant with drive-in service'' is defined as:

''An establishment designed, in whole or in part, to cater to or accommodate the consumption of food and/or beverage in automobiles on the premises of such establishment.''

The uncontroverted testimony and evidence in the case at bar indicates that the proposed establishment will provide facilities inside the building to enable 72 persons to sit down and consume food and drink; there will be no car-hops or other service personnel to serve food to persons in their automobiles; nor will trays be provided for persons to convey food and drink to their automobiles for consumption therein; and that it will be necessary to enter the building in order to be served.

It is to be noted that the Planning and Zoning Ordinance in question fails to define either the term ''restaurant'' or ''drive-ins,'' thus, as is stated in 82 A. L. R. 2d 992:

''The courts will not attach a strained meaning to the words of the ordinance or find a prohibition by implication, however, since zoning regulations are in derogation of the common law and are strictly construed.''

In the absence of definitions of terms to the contrary contained in a planning and zoning ordinance for the purpose of determining permitted land use of property under a zoning classification, what constitutes a ''restaurant'' as opposed to a nonpermitted ''drive-in,'' is deter-

mined by considering the common and ordinary meaning of those terms, liberally construed in favor of the permitted use. Accordingly, this court is of the opinion that appellant's proposed land use will not be a "drive-in" within the common and ordinary meaning of the term, and thus it cannot be said that such use will fail to conform with the provisions of Section 1337.02 (i) of the subject Planning and Zoning ordinance, and the court so finds.

The third and final issue presented is the proposition that the proposed land use, as and for a "Red Barn" eating establishment, will not conform with the provisions of Section 1337.04 (e) which refers to Section 1353.03 (d) of the said Planning and Zoning Ordinance with respect to that portion which reads:

"Entrances and exits shall be located to minimize traffic congestion and avoid undue interference with pedestrian access at street intersection corners."

Questions of traffic congestion and pedestrian hazards are, quite properly, matters of concern for municipal zoning authorities, however, the court is of the opinion that, although as dicta, Judge Peck, in the case of *State, ex rel. Killeen Realty Co.,* v. *East Cleveland,* 169 Ohio St. 375, at page 386, enunciated the law of Ohio in this regard to be that:

"* * * traffic regulation must remain a by-product of zoning activities, and the primary product must always be to insure the greatest enjoyment of one's land, taking into account the rights of others and the needs of the community. Thus, if the present proposal is otherwise lawful and proper, the public authorities must find some manner of dealing with the traffic hazards * * *."

A proposed land use, appearing to be otherwise lawful and proper, should not be curtailed because of the possibility of generation of traffic congestion or interference with pedestrian access at street intersection corners. Traffic regulation must remain a by-product of zoning activities, and the primary product should always be to insure the greatest enjoyment and maximum use of one's land, taking into account the rights of others and the needs of the community. At the same time, however, it must be

remembered that zoning restrictions, being in derogation of the common law, operate to deprive an owner of property of a use thereof which would otherwise be lawful, therefore such restrictions must be strictly construed in favor of the property owner.

This court, after consideration of all the evidence and testimony adduced at the hearing, and after review of the transcript of the proceedings of the Appellee Board of Zoning Appeals, is not convinced that the burden of proof has been sustained to support denial of the zoning certificate sought by the appellants herein by reason of the proposed land use not being in conformance with Sections 1337.04 (e) and 1353.03 (d). There appears to be no affirmative showing that traffic congestion will be increased or that pedestrian access will sustain undue interference. Again, to the contrary, it might be assumed that the location of this proposed eating establishment in the central commercial district could help to alleviate traffic congestion by affording an eating facility not now available, thus reducing the need for those persons employed or otherwise in the area to use their motor vehicles in order to reach eating places located outside the district. Consequently, the court is of the opinion that the proposed land use does conform with the provisions of the ordinance sections in question.

This court thus finds that the decision and ruling of the city of Wadsworth Board of Zoning Appeals as it appears in the within cause should be reversed; and that the City Zoning Inspector should, forthwith, cause to be issued to the appellants herein, a zoning certificate for the construction, maintenance and operation of a "Red Barn" eating establishment on the premises as herein designated.

*Decision reversed.*