## Meyer v. Warminster Township Zoning Hearing Board

*George M. Bush,* for appellants.

*R. Barry McAndrews,* for Commonwealth.

SATTERTHWAITE, P. J., January 28, 1971.—The problem in this zoning case is one of construction and validity of certain provisions of the Warminster Township ordinance pertaining to restaurants. Would the proposed Carrolls limited menu, rapid service enterprise be a conventional type of restaurant permitted under the applicable C commercial zoning classification of the subject premises; or, as the Warminster Zoning Hearing Board found, would it be rather a drive-in type of restaurant, which is permitted only in HC commercial districts and, if properly characterized as in the latter category, is the distinction proper to justify differing treatment in an exercise of the zoning power?

Among the uses authorized in C commercial districts by section 901 of the Warminster ordinance, as amended, is so-called "Use 24. Eating place for the sale and consumption of food and beverages without drive-in service."

Use 24 is further defined in section 1405:

"(24) Eating place for the sale and consumption of food and beverages without drive-in service and without take-out service. All food and beverages to be served by waiters or waitresses and consumed inside the building while patrons are seated at counters or tables."

Not permitted in C commercial districts but allowable under section 1101 in HC highway commercial

districts is "Use 25. Eating place for the sale and consumption of food and beverages with drive-in service."

Section 1405 does not further elaborate upon use 25.

Appellants, the disappointed applicants who have been refused a permit for the proposed use under consideration contend, in the alternative, (1) that such proposal factually does not constitute a drive-in restaurant within the meaning of these ordinance provisions, or, even if it does, (2) that the differing treatment of drive-in restaurants as contrasted with conventional or full-service eating places is improper and invalid. The board's decision, in effect although not expressly, ruled against appellants on the first question and did not discuss the second.

We believe that, in general, appellant's contention of the invalidity of the ordinance distinction between restaurants and drive-in eating places is without merit.

It may well be that a "drive-in" enterprise, where food is prepared and dispensed from within a structure, but actually consumed as a matter of substantial practice in or about parked cars of patrons located on a surrounding exterior parking area, is included within the unqualified and unrestricted permissible use of premises for "restaurant" purposes in the absence of more particular ordinance provisions: Food Corporation v. Zoning Board of Adjustment, 384 Pa. 288, 290 (1956); Dalgewicz v. Falls Township Zoning Board of Adjustment, 16 Bucks 110, 39 D. & C. 2d 684 (1966). But these cases do not control the present situation where there are other and more specific ordinance classifications and regulations.

While no Pennsylvania precedents squarely in point have been found, persuasive and well-reasoned decisions in other jurisdictions have held that "drive-ins" conducive to outdoor consumption of food, because of potential problems and possibly unfavorable con-

ditions of litter, unseemly and uncontrolled outdoor congregation of patrons to the annoyance of the surrounding neighborhood, noise and like factors, may properly be the subject of special treatment and regulation not required of restaurants generally by a zoning ordinance: Morris v. Postma, 41 N. J. 354, 196 A.2d 792, 796 (1964); Gino's of Maryland, Inc., et al. v. City of Baltimore et al., 250 Md. 621, 244 A.2d 218, 227 (1968); Ben Lomond, Inc. v. City of Idaho Falls, 92 Idaho 595, 448 P.2d 209, 219 (1968); but see Frost v. Village of Glen Ellyn, 30 Ill. 2d 241, 195 N. E. 2d 616 (1964), apparently, contra. An annotation including cases involving this question appears in 82 A. L. R. 2d 989. We believe, for the public health, safety and welfare, considerations set out more at length in these cases, that it is not arbitrary or unreasonable for a municipality to classify drive-in restaurants differently than conventional restaurants for zoning purposes.

The real problems in this case are not the validity of the distinction generically, but rather the factual interepretation and propriety of specific criteria purporting to verbalize and define such distinction, plus, of course, the ultimate application of the resulting standards to the proposal in question. In this connection, a summary of appellants' plans and the evidence relative thereto before the board (and the board's record was not supplemented here) is in order.

The property in question is located at the intersection of Street Road and Madison Avenue and contains about one and one-quarter acres of land. It fronts 162 feet on Street Road, a busy, four-lane arterial highway, and extends in depth 272 feet on Madison Avenue to Olive Street in the rear. The surrounding area, from photographs in the record, would seem to be partly residential, although largely commercial, and, as already noted, it is zoned as a C commercial district.

Present structures on the premises would be razed and a new Carrolls distinctive building, heated and air conditioned with completely enclosed glass walls and overhanging roof, would be constructed to occupy somewhat more than 2,500 square feet of ground area set back about 35 feet from the line of Street Road and midway between side boundaries of the lot. Surrounding this building on all four sides would be a paved parking lot marked out to provide parking for 63 cars. The exterior area of the premises would be illuminated by the interior light passing through the glass walls, supplemented by spot lights mounted on the building to light up the rear parking area.

Within the building would be located the food preparation and dispensing facilities, as well as booths, tables and seating arrangements for 84 patrons. The food, prepared behind and sold over a central counter between the hours of 11 a.m. and 11 p.m. daily, would be of a limited menu character, consisting only of certain types of heated sandwiches, possibly fried chicken, french fried potatoes and soft drinks. The sandwiches and french fries would be dispensed in paper bags, the fried chicken in cardboard boxes, with all presented to the patron on a cardboard tray with holes or depressions to hold the paper or cardboard beverage cups. Dispensers would be located on the counter for paper napkins and drinking straws. No plates or eating utensils of metal, china, plastic or even cardboard would be furnished the patron. No waiter or waitress service at the booths or tables would be provided, patrons being required to obtain their own food at the counter.

No "car-hop" or other food service would be furnished to patrons in their parked cars. However, although Carrolls' representative indicated in his testimony before the board that consumption of food within the building would be encouraged by the

facilities therein provided, there would not be, and probably could not practically be, any total and absolute restraint against customers taking food and beverages outside the building. In this connection, it may also be noted that several large exterior waste disposal receptacles would be provided, both immediately outside the building itself as well as at locations within or adjacent to the parking area.

The board, as its only really dispositive finding, stated:

"2. The applicants' insistence that the food be served in paper bags, as opposed to the food being served on plates or trays, clearly indicates that their method of operation would not meet the requirements of Section 1405, Use 24."

Other than that arguably contained within the innuendo of the finding just quoted, the board made no determination that food would be consumed, to any practical degree, by patrons outside the building but still on the premises, in parked cars or otherwise. Nor was there any evidence in the board's stenographic record which would permit any affirmative inference that such a result would obtain. To the contrary, the opinion of the only witnesses who testified on the subject were to the effect that, although appellants could not absolutely guarantee that patrons would eat only within the structure, the physical facilities therein would be developed at substantial expense and were intended to encourage that practice, and that it was anticipated that such interior facilities, in fact, would be used as intended.

In the absence of an unequivocal determination that food would be consumed to any significant extent in parked cars or outside the building and still on the premises, the board was in error in refusing the instant application. The record makes it apparent that its decision was founded on the premise that the

proposal could be denied merely because food would not be served, even within the building, in a particular way by the use of waitress service to the tables and would be consumed by the patron without the use of conventional plates, knives, forks and spoons and while the patron was possibly not seated at a counter or table. But these superficialities, in themselves, have no possible relation to the zoning function, which can properly be concerned only with matters realistically pertinent to considerations of public health, safety, morals or welfare. So long as such activities are not carried on upon the exterior portion of the premises, it is of no concern to anyone whether patrons attend this eating place to serve themselves cafeteria style, dine while standing or eat with their fingers out of paper bags. Nor would it be a matter requiring special regulation in the public interest within this commercial zone if a patron avails of the proposed facilities to take his quick lunch off the premises to his home or place of business, just as he might take his food purchased from a grocery store.

In short, while, as already indicated, it would be proper for Warminster Township to provide special zoning treatment for the true drive-in type of restaurant, where in-car or other exterior food service would be provided, we do not believe that it might properly discriminate against the fast-service, limited-menu and possibly cheaper and standardized chain eating place, as contrasted with what might be regarded as a more conventional restaurant, where such exterior services would not be availed of. For these reasons, on the present record and findings of the board, the within appellants have proposed an enterprise permissible under the only properly applicable criteria of use 24, i.e., "Eating place for the sale and consumption of food and beverages and without drive-in service." Compare Burke v. O'Connor, 53 Misc. 2d

669, 279 N. Y. S. 2d 633 (1967); Ederer v. Board of Zoning Appeals, 18 Ohio Misc. 143, 248 N. E. 2d 234 (1969); American Fast Foods, Inc. Appeal, 50 D. & C. 2d 192 (1970).

On the present record, no "in-car" consumption of food on the parking lot is contemplated, and the permit hereinafter authorized might well be so endorsed as a cautionary matter. See Gino's of Maryland, Inc. v. City of Baltimore, 250 Md. 621, 244 A.2d 218 (1968); American Fast Foods, Inc. Appeal, 50 D. & C. 2d 192 (1970). If actual experience in the future should demonstrate that "in-car" consumption of food on the parking lot of the within premises has become a matter of more than occasional or casual practice, whether or not encouraged or condoned by the proprietor of the eating place, appropriate remedies for enforcement of the within zoning prohibition against drive-in restaurants might be pursued by the township. In this connection, appellants and their successors are hereby put on notice that they act at their peril if the premises not be used in actual practice as they have proposed. Gino's of Maryland, Inc., supra, was concerned with this very eventuality; the permit for the original Gino's restaurant therein, the same as that sought by the instant application, did not contemplate "in-car" service or consumption of food on the parking lot, but violations of the restriction against such use did, in fact, occur, and notices of proposed sanctions by reason thereof were the occasion for Gino's unsuccessful action to attempt to avoid such restriction.

## FINAL ORDER

And now, January 28, 1971, for the reasons stated in the foregoing opinion, the decision of the Warminster Zoning Hearing Board in the within matter is hereby reversed, with directions to issue a zoning permit in accordance with this opinion.