## Abington Township *v.* Dunkin' Donuts Franchising Corporation.

Argued February 7, 1972, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*Daniel B. Michie, Jr.,* with him *Fell, Spalding, Goff & Rubin,* for appellant.

*Emanuel A. Bertin,* with him *Moss, Rounick & Hurowitz,* for appellee.

*Fred J. Silverman,* for intervenor, Cohen.

*Hubert D. Yollin,* for intervenor, Krantz.

OPINION BY JUDGE MENCER, May 23, 1972:

On March 20, 1970, a building permit was issued to appellee Dunkin' Donuts Franchising Corporation (Dunkin' Donuts) to permit the erection of a building on property zoned F-1 Commercial District located on the northwest corner of Old York Road and Berrell Avenue, Abington Township, Montgomery County. The purpose of the building, as stated on the permit application, was to erect a "retail baked goods and restaurant."

Walter J. Krantz, M.D., whose property is located immediately adjacent to the property in question, appealed on March 27, 1970, to the township Zoning Hear-

ing Board (Board) from the issuance of the permit. After a public hearing, the Board, on June 10, 1970, rendered its decision in which it rescinded the permit on the grounds that (1) the parking requirements were not met for a combination restaurant and retail baked goods shop; and (2) the proposed establishment is a "restaurant specializing in take-out foods" which is prohibited in a F-1 Commercial District by Section 1101 (4) of the township ordinance.[1] On July 9, 1970, Dunkin' Donuts appealed from the Board's decision to the Montgomery County Court of Common Pleas. The owner of the subject property and Dr. Krantz then intervened. After argument before the court en banc on April 7, 1971, the court on April 15, 1971, reversed the Board's determination that the proposed use of the property is prohibited in an F-1 Commercial District and remanded the matter to the Board on the issue of compliance with the parking requirements for the double usage as a retail baked goods shop and restaurant. This was in accord with the court's determination that a Dunkin' Donuts enterprise ". . . constitutes a double usage, namely, a restaurant and retail bakery, both per-

---

[1] Section 1101 of Article XI (entitled "F-1 Commercial Districts") of the Zoning Ordinance of the Township of Abington provides in part:

"Section 1101. Use Regulations. A building or group of buildings may be erected or used, and a lot may be used or occupied, for any of the following purposes and no other:

\* \* \* .

2. Retail store, not including a pet shop.

\* \* \*

4. Restaurant or similar establishment, not including drive-in restaurant, or restaurants specializing in take-out foods.

\* \* \*

7. Personal service shop or custom shop for the repair or servicing of clothing or household articles or for making articles to be sold at retail on the premises, such as: . . . bakery or confectionery; or similar establishment."

mitted uses under Article XI, Section 1101(4) and (7) of the Ordinance." The township then intervened in the case and brought this appeal on May 12, 1971.

Initially, as to a Motion To Quash filed by appellee, after considering the supplemental briefs filed by each party, we dismiss such motion as having no merit.

Since the court below took no additional testimony, our duty is to determine whether the Board clearly abused its discretion or committed an error of law. *Lower Providence Township and Wood v. Ford,* 3 Pa. Commonwealth Ct. 380, 283 A. 2d 731 (1971), and cases cited therein.

The following Standard and Poor's Corporation 1970 Annual Stock Report description of the Dunkin' Donuts Corporation Franchise is a part of the record:

"The company is engaged primarily in developing, franchising, and operating shops that feature a wide variety of donuts and donut pasteries, as well as coffee and other beverages. It also franchises or operates drive-in restaurants that serve inexpensively priced hamburgers and other food and beverage items.

\* \* \* .

"Dunkin' Donuts shops feature more than 52 varieties of donuts, as well as donut pasteries, all freshly prepared at the shop, and also coffee and other beverages, both for take-out and on premises consumption."[2]

The record reveals that Dunkin' Donuts sells coffee, hot chocolate, hot tea, milk, iced coffee, iced tea, soft beverages, such as grape and orange drinks, and juices of many types. It operates 24 hours a day and 7 days a week.

---

[2] We specifically do not deal here with that type of Dunkin' Donuts operation referred to as ". . . drive-in restaurants that serve inexpensively priced hamburgers and other food and beverage items."

Approximately 400 square feet of the proposed building would be used for the sale of these beverages and doughnuts to customers at a "sit-down counter" which has twenty stools. Approximately 80 square feet of the building, near the entrance and exit doors, would be taken up with a smaller counter, with a separate cash register, where doughnuts would be sold by the dozen.

Appellants of course argue that Dunkin' Donuts deals in a specialty item, *i.e.*, doughnuts, the majority of which it is alleged are taken out for consumption elsewhere, and therefore such store falls within the meaning of "restaurants specializing in take-out foods," a use prohibited by Section 1101(4) of the ordinance in an F-1 Commercial District.

Dunkin' Donuts counters that, as stated on the original building permit application, its operation will be a "retail baked goods and restaurant" and therefore allowable under subsections (4) and (7) of Section 1101.

Both parties to this appeal agree that the contemplated Dunkin' Donuts operation is a "restaurant" although the township ordinance provides no definition of "restaurant", "restaurants specializing in take-out foods", or "bakery". We turn to *Webster's Third New World Dictionary* 164, 1910, 1936 (15th ed. 1966) which provides the following definitions:

"restaurant"—"an establishment where refreshments or meals may be procured by the public; a public eating house."

"refreshment"—"something (as food, drink) that refreshes"; and in the plural means "a light meal; lunch."

"bakery"—"a place in which baked products (as bread, cakes, cookies) are made; an establishment (as a retail shop) that sells baked products chiefly or exclusively."

*Black's Law Dictionary* 181 (4th ed. 1968) defines "bakery" as: "Any place used for the purpose of mixing, compounding, or baking for sale or for purposes of a restaurant, bakery or hotel, any bread, biscuit, pretzels, crackers, buns, rolls, macaroni, cake, pies, or any food products of which flour or meal is a principal ingredient."

In the absence of an ordinance definition, it would seem, at least by accepting Black's more general definition, that Dunkin' Donuts' proposed use could be described (Section 1101(7)) as a "Personal service shop or custom shop . . . for making articles to be sold at retail on the premises, such as: . . . bakery or confectionery; or similar establishment." *See Kane v. Livingston,* 170 N.Y.S. 2d 98 (1957).

Again in the absence of an ordinance definition, in its attempt to determine whether the proposed Dunkin' Donuts enterprise is encompassed by the phrase "restaurants specializing in take-out foods", the lower court stated:

"Certain cases which have interpreted zoning regulations dealing with restaurants are of import. In Food Corporation v. Zoning Board of Adjustment, 384 Pa. 288 [121 A. 2d 94] (1956) the Pennsylvania Supreme Court included under the general term 'restaurant' a drive-in restaurant as a permitted use. Following this, zoning ordinances in Pennsylvania sought to avoid this result by expressly prohibiting drive-in restaurants in certain districts. Courts in other jurisdictions determined that operations such as 'Burger King', and 'Gino's', where meals were prepared to take out, were to be classified as 'restaurants' rather than as the prohibited 'drive-in restaurants'. In Burger King of St. Louis, Inc. v. Weisz, 444 S.W. 2d 517 (1959), the Supreme Court of Missouri described this distinction at page 520:

'In its plan of operation, . . . (of the proposed Burger King) . . . there were to be no car-hops or waitresses and no take-out windows. *A limited menu of prepared food* would be offered its customers and it would be necessary for those who wished to purchase anything to go into the building where they would be served from a counter. Patrons could eat inside *or take their order away from the building.* There would be no service to automobiles, or curb-service, as it is frequently called. All food and beverages would be served in paper containers. . . .' (Emphasis supplied)"

It might well be that the inclusion into the township ordinance of the phrase "drive-in restaurant" was meant to proscribe such establishments as Burger King, McDonalds, Carrolls, Red Barn, and Gino's, and the phrase "restaurants specializing in take-out foods" to prohibit Dunkin' Donuts-type restaurants or "snack shops". But since appropriate definitions are lacking in the ordinance, we are left to speculate as to what such terms mean, and we ". . . will not attach a strained meaning to the words of the ordinance or find a prohibition by implication, however, since zoning regulations are in derogation of the common law and are strictly construed [in favor of the property owner]." Annot., 82 A.L.R. 2d 989, 992 (1962) ; *Peterson v. Zoning Board of Adjustment,* 412 Pa. 582, 195 A. 2d 523 (1963) ; *Fidler v. Zoning Board of Adjustment,* 408 Pa. 260, 182 A. 2d 692 (1962) ; *Lord Appeal,* 368 Pa. 121, 81 A. 2d 533 (1951).[3] Thus, where an ordinance uses the terms "restaurant", "drive-in restaurant", and "restaurants specializing in take-out foods" without defining

---

[3] "One need only add that there are no sure external standards for judging legislative motive: and that once such an inquiry is admitted, the Court is on the high seas of subjectivism with not a port in sight." *The Mind and Faith of Justice Holmes* 146 (M. Lerner ed., Modern Library ed. 1943).

any of them, any ambiguity in their meaning or application will be resolved in favor of the property owner. *Vitolo v. Chave,* 63 Misc. 2d. 971, 314 N.Y.S. 2d 51 (1970). "What constitutes a 'restaurant' as opposed to a 'drive-in restaurant' [or, for that matter, 'restaurants specializing in take-out foods'] for the purpose of determining the permitted use of property under a zoning classification in which those terms are not otherwise defined is determined by considering the common and ordinary meaning of those terms, liberally construing them in favor of the permitted use so as not to extend the restrictions of the ordinance to any limitation of use not therein clearly prescribed." *Ederer v. Board of Zoning Appeals,* 18 Ohio Misc. 143, 147-8, 248 N.E. 2d 234, 237 (1969).

As the court stated in *Appeal of American Fast Foods, Inc.,* 18 Ches. Co. Rep. 311, 312, 50 D. & C. 2d 192, 194-5 (1970): "The township argues that the provision in question is directed against the operation of a 'Gino' type of establishment, and that such an establishment creates undesirable side effects which should not be permitted within the township. We do not know whether a Gino establishment is good or bad from the township's point of view. If it encourages activity which conflicts with the public interest, the prohibition of the undesirable activity would seem to be the appropriate method of overcoming its undesirable effect. That result cannot be obtained by attempting to read a meaning into the language of the zoning ordinance which that language does not justify."

Order affirmed.