Appeal of Mt. Laurel Racing Association et al. *v.* Zoning Hearing Board, Municipality of Monroeville. Mt. Laurel Racing Association and Seach Development Company, Agent for Mt. Laurel Racing Association, Appellants.

532

Argued March 2, 1983, before Judges BLATT, CRAIG and DOYLE, sitting as a panel of three.

*William R. Grove, Jr., Hollinshead and Mendelson,* for appellants.

*Lee R. Golden,* for appellee.

*John D. Finnegan,* for intervenor, Municipality of Monroeville.

*Carl G. Cooper,* for intervenor, Citizens Against the Racetrack.

OPINION BY JUDGE BLATT, April 20, 1983:

Mount Laurel Racing Association and its agent, Seach Development Company (appellants) appeal here an order of the Court of Common Pleas of Allegheny County which affirmed a decision of the Zoning Hearing Board (Board) of the Municipality of Monroeville (Municipality). That decision denied the appellants' request for approval of a conditional use application for development of a harness racing facility.[1]

Our scope of review, in zoning appeals, where, as here, the common pleas court does not take additional evidence, is to determine whether or not the Board abused its discretion or committed an error of law. *Goodman v. Board of Commissioners of the Township of South Whitehall*, 49 Pa. Commonwealth Ct. 35, 411 A.2d 838 (1980).

The appellants had applied for permission to build a harness racing facility in the Municipality's M-2 Heavy Industrial District, for which the applicable zoning ordinance section provides in pertinent part:

*SECTION 1201:* USE: In this district land and structures may be used and structures may be erected, altered, enlarged and maintained for the limited special uses hereunder, but including the retail sale of products when such sale is clearly incidental to the permitted industrial use.

1201.1 *Any use permitted in the "M-1" District,* Section 1101 other than business or professional office. (Emphasis added.)

Section 1101 of the ordinance which relates to the Planned Light Industrial District, provides:

---

[1] Upon the 88-acre tract would be constructed public grandstands, clubhouses, restaurants, barns, and other sport facilities such as baseball and soccer fields.

*SECTION 1101:* USE: In this district, the land and structures may be used, and structures may be erected, altered, enlarged and maintained for limited light industrial uses listed hereunder (including in each instance Unit Group Building development), when constructed within an enclosed building, unless otherwise, specifically stated, provided:

a. No explosive materials or processes are involved.

b. No smoke, fumes, odor, dust, noise, vibration or glaring light is noticeable from outside any lot in this district.

c. The use is not offensive by reason of emission of refuse matter or water-carried waste.

1101.15 *Recreation uses, need not be within an enclosed building.* (Emphasis added.)

The appellants argue that their proposed use is recreational and is, therefore, permitted. The ordinance, however, does not define the term, "recreation".

In interpreting provisions of a zoning ordinance, undefined terms must be given their plain, ordinary meaning. *Kuhn v. Hanover General Hospital,* 34 Pa. Commonwealth Ct. 207, 382 A.2d 1305 (1978). Webster's Third New International Dictionary defines "recreation" as "a means of getting diversion or entertainment." *Id.* at 1899 (1966). And it is clear that, absent a limiting legislative definition, a term permitting a use must be presumed to have been employed in its broadest sense. R. Anderson, Law of Zoning in Pennsylvania 581 (1982). Moreover, words in a zoning ordinance should be given the common meaning and any doubt should be resolved in favor of the landown-

er. *See Abington Township v. Dunkin' Donuts Franchising Corp.*, 5 Pa. Commonwealth Ct. 399, 291 A.2d 322 (1972) (construing "restaurant"); *see also Gilden Appeal,* 406 Pa. 484, 178 A.2d 562 (1962) and *Burgoon v. Zoning Hearing Board of Charlestown Township,* 2 Pa. Commonwealth Ct. 238, 277 A.2d 837 (1971) ("education uses").

This Court held in *Dunkin' Donuts* that, when appropriate definitions are lacking, it would not attach strained meanings to the words used or find a prohibition by implication. In addition, our Supreme Court has held in *Fidler v. Zoning Board of Adjustment,* 408 Pa. 260, 182 A.2d 692 (1962) that to permit widest use of land is the rule and not the exception, unless the use is specifically restrained in a valid and reasonable exercise of the police power.

The appellants, in support of the rule requiring a broad interpretation, presented expert testimony to the Board. David Bond, an architect, cited a work by urban planner F. Stuart Chapin, Jr. entitled *Urban Land Use Planning,* in which Chapin classified all types of land use activity and included racetracks in the recreation category.[2] In addition, portions of a treatise by Seymour M. Gold entitled *Urban Recreation Planning* were introduced into the record after Bond's identification, which also categorized horse

---

[2] Bond testified as follows:

And what he suggests with respect to *recreation,* he says that under the broad category of general welfare, community service and noncommercial leisure-time activities, including parking service and other related areas, that recreation not elsewhere classified should be one category, including playgrounds, parks and related open space, golf course, country clubs, riding academies, winter sports areas, auditoriums, stages, *race tracks,* fairgrounds, outdoor water recreation, hunting and fishing reserves, and summer camps. (Emphasis added.)

racing as a recreation activity.[3] Bond likewise quoted from judicial sources noting that, in *A. G. v. Cooma Municipal Council*, [1962] N.S.W. St. R. 663 at 667, it was held that:

> A public library is source of public recreation in the same way as a public racecourse, even though it may not be frequented by as large a number of persons.[4]

The municipality and the Intervenor, Citizens Against the Racetrack (CART), argued other maxims of statutory construction. They submitted that the or-

---

[3] Translating these blocks of individual time into a national estimate is difficult because of the lack of precise data. *Table 2 gives estimates of the total time spent on certain outdoor recreation activities for which information is available.* Note the possible duplications, *i.e.*, fishing, boating and hunting. Also, many types of activities such as gardening and lawn care, which are possibly larger than any single item included, are excluded.

TABLE 2

Estimate of Leisure Time Spent in *Selected RECREATION ACTIVITIES 1960*
(Million Man-Hours)

| | |
|---|---|
| Travel for pleasure | 5,330 |
| Visits to public outdoor recreation areas | 11,047 |
| Fishing in all areas | 1,500 |
| Hunting in all areas | 1,125 |
| Boating of all kinds | 600 |
| Bowling | 660 |
| Organized Sports | 600 |
| Horse racing | 150 |
| Total | 21,012 |

(Emphasis added. Footnotes omitted.)

[4] Our independent research has disclosed the case of *Aquamsi Land Co. v. City of Cape Girardeau*, 346 Mo. 524, 142 S.W. 2d 332 (1940) involving whether or not the word "park" would include a racetrack. The court there stated that the outdoor recreative nature of the proposed use is the determinative factor and that this type of reasoning would apply to a track and other facilities for horse racing.

dinance must be read as a whole with due regard to the intent of the drafters.[5] *See Appeal of Neshaminy Auto Villa Ltd.,* 25 Pa. Commonwealth Ct. 129, 358 A.2d 433 (1976). This, of course, is true. They also noted correctly that legislative intent is considered the polestar of statutory construction. *Olson v. Brumbaugh,* 71 Pa. Commonwealth Ct. 471, 454 A.2d 1203 (1983). Yet, an examination of the entire ordinance indicates that, while recreational uses are permitted elsewhere in the Municipality, the sections governing the recreational uses in these other districts are more restrictive. In Residential Districts only *publicly-owned* recreation areas are permitted generally and only *non-profit* recreation areas are permitted as conditional uses. Likewise, the Conservancy District permits only non-profit recreation areas as a conditional use. On the other hand, the allowance of a recreational use in the M-2 District is completely unrestricted. There are no limitations as to type, size, ownership, profitability or any other aspect or characteristic of the use. And, inasmuch as the legislative objectives are expressed in Section 109 of the ordinance, and they include the providing of recreational facilities, we do not believe the allowance of a race course in an M-2 District frustrates the legislative scheme.

---

[5] It is urged by the Municipality that the track should be considered an amusement enterprise, permitted in the C-2 Commercial Business District. Section 901.3 reads:

> Amusement enterprise, as follows: billiard or pool hall, bowling alley, boxing arena, dance hall, games of skill and science, theatre or cinema (other than drive-in theatre), shooting gallery and the like, provided that any portion of the uses within three hundred (300) feet of property in an "R" District shall be conducted entirely within a completely enclosed building.

We do not read this section to apply, even with a most strained construction, to a harness racing facility.

The Board made the following Findings of Fact:

24. The dictionary definition of the word "recreation" as proposed by the Applicant is much too broad for land use connotation.

25. Recreation as a land use is not usually defined in a Zoning Ordinance, and in any event, is much smaller in scale than any proposed harness racing facility with ancillary uses as proposed by the Applicant.

These findings, however, are actually conclusions of law and, as such, are clearly in error.

We must, therefore, reverse the trial court's order and remand for proceedings consistent with this opinion.[6]

### ORDER

AND Now, this 20th day of April, 1983, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby reversed and the case remanded to that court so that it in turn will remand the matter with directions to the Zoning Hearing Board for consideration of any conditions which need be imposed consistent with this opinion.

Jurisdiction relinquished.

---

[6] Because this is a conditional use application, we will remand for a determination of what conditions, if any, need be imposed.