887 A.2d 335 (2005)
Brian A. CANDELA and Antoinette Candela, husband and wife, Appellants,
v.
MILLCREEK TOWNSHIP ZONING HEARING BOARD
v.
Waldameer Park, Inc., Paul T. Nelson and Stephen F. Gorman and Nancy Gorman, husband and wife, and Millcreek Township.
Commonwealth Court of Pennsylvania.
Argued October 18, 2005.
Decided November 22, 2005.
*336 Christopher J. Sinnott, Timothy M. Zieziula, Erie, for appellants.
Thomas E. Kuhn, Erie, for appellee, Millcreek Township Zoning Hearing Board.
Jeffrey J. Cole, Erie, for appellee, Waldameer Park, Inc.
BEFORE: LEADBETTER, J., and LEAVITT, J., and FLAHERTY, Senior Judge.
OPINION BY Judge LEAVITT.
Brian and Antoinette Candela appeal an order of the Court of Common Pleas of Erie County that affirmed a decision of the Millcreek Township Zoning Hearing Board. In this case we consider whether the Board erred in granting to the owners of an amusement park a variance from the setback provisions of the Township's Bluff Setback Ordinance[1] thereby authorizing the construction and operation of a roller-coaster. We affirm.
Waldameer Park is an amusement park that has been in operation for over 100 years at its present location in Millcreek Township, Erie County, adjacent to, but not abutting, Lake Erie. The 14-acre park is comprised of several parcels of land owned by Paul T. Nelson and Stephen and Nancy Gorman. The park parallels the lake on an east-west axis and is bisected by Peninsula Drive,[2] which continues to *337 Presque Isle. The northwest side of the park slopes down[3] to a sandy shelf, approximately 500 feet wide, on which the home and campground of the Candelas is located. Beyond the sandy shelf lies Lake Erie. The northeast side of the park slopes down to the neck of Presque Isle.
A rollercoaster known as the Ravine Flyer was built at the park's northern edge, on both sides of the slope, overlooking the lake and Presque Isle. The Ravine Flyer was dismantled in the late 1920's, but its station building remains at its original site and is currently used as a picnic pavilion. In the late 1990's, Waldameer Park advised the Township of its interest in constructing a successor rollercoaster on the site of the original, to be known as the "Ravine Flyer II." The proposed Ravine Flyer II will be located on land west and east of Peninsula Drive, along the top of the slope and down its sides. It is presently a vacant area covered by grass, trees, brush and other vegetation.
The design of the Ravine Flyer II, as proposed, calls for construction of a station house where riders will access and depart the ride, a suspended track upon which two trains of passenger cars will travel, and a bridge crossing Peninsula Drive. Most of the structure will be located on the western side of Peninsula Drive. The project also calls for construction of a paved access road at the foot of the slope with a retaining wall. The proposed Ravine Flyer II was designed by licensed engineers who evaluated the slope at the site and determined that the subsurface soils and bedrock are sufficiently strong to support the structure.
On October 27, 2003, Waldameer Park applied for a building permit to construct the Ravine Flyer II. The code enforcement officer denied the application because the land making up the park is designated a "bluff recession hazard area." The slope is, legally, a "bluff," and the slope's high point is considered the crest of the bluff. Because construction along Lake Erie's bluffs is regulated by setbacks, a permit for the construction of Ravine Flyer II required a variance from the setbacks.
By way of further background, in 1980 the General Assembly enacted the Bluff Recession and Setback Act (Act)[4] in an effort to create a comprehensive and coordinated program to encourage sound land use planning and development in bluff areas.[5] The Act directs the Environmental Quality Board (EQB) to identify municipalities containing "bluff recession hazard areas"[6] and establish minimum bluff setback *338 requirements for those areas. Sections 4(c) and 5(a) of the Act, 32 P.S. §§ 5204(c), 5205(a). The EQB is further directed to adopt regulations providing standards and procedures for obtaining variances to the bluff setback requirements. Section 5(c) of the Act, 32 P.S. § 5205(c). Any municipality subject to bluff recession hazards is required under the Act to regulate, by ordinance, construction and development activities in bluff recession hazard areas in a manner consistent with the minimum bluff setback requirements prescribed by the EQB. Section 6(a) of the Act, 32 P.S. § 5206(a). The Act further provides that "[t]he adoption and administration by municipalities of bluff setback ordinances and regulations ... shall be governed by the provisions of the [Pennsylvania Municipalities Planning Code[7]]." Section 6(b) of the Act, 32 P.S. § 5206(b).
The EQB has designated Millcreek Township as one of eight municipalities in Erie County possessing a bluff recession hazard area. 25 Pa.Code § 8526(c).[8] Development in a bluff recession hazard area is, in accordance with the Act, subject to the following minimum setback distances, as measured from the crest of the bluff landward: 50 feet for residential structures, 75 feet for commercial structures and 100 feet for industrial structures. 25 Pa.Code § 85.26(c). The purpose of these setbacks is to discourage construction on land next to the edge of a bluff because that land is subject to erosion, which, over time, will move the bluff edge landward.
The Township adopted its Bluff Setback Ordinance (Ordinance) in August 1981. It incorporates the setback distances identified in the Act and regulations, generally prohibiting the construction, installation or substantial improvement of structures within the minimum bluff setback distances. Ordinance § 4(3). Like the Act and the regulations, the Ordinance provides for a variance from the setback requirements in two situations:
1. When a parcel, established prior to a bluff recession hazard area designation, does not have adequate depth considering the minimum bluff setback requirements to provide for any reasonable use of the land. The variance may be granted only when each of the following criteria are met.
a. The structure and all associated structures and utility facilities shall be located on the property as far landward of the bluff line as allowed by other municipal ordinances.
b. The structure shall be designed and constructed to be movable in accordance with proper engineering standards and building moving restrictions applicable to the subject area prior to damage by bluff recession. Structures in this category may include trailers or modular homes. Review and approval of the design shall be conducted by the Code Enforcement Officer. All construction materials, including foundations, shall be removed or disposed of as part of the moving operation. Access to and from the structure site shall be of sufficient *339 width and acceptable grade to allow for moving of the structure.
2. When the proposed structure or utility facilities require access to the body of water and there is no feasible alternative for obtaining such access. A variance may be granted only for the discharge and withdrawal lines (infrastructure) that provide lake water for operating purposes and only when each of the following criteria are met:
a. During the construction, the applicant or persons engaged in the actual placement of the infrastructure must utilize sound land use practices which will reduce disruption of the bluff edge and bluff face. These sound land use practices include but are not limited to methods to minimize: Stormwater run-off, increased soil erosion, changes to local drainage patterns, and changes to protective vegetative cover.
b. The infrastructure providing the utility facility or structure access to the lake will be designed and constructed so that it is adequate protection of the bluff, the construction of the infrastructure will occur in a manner that minimized potential adverse or long-term disruption of the bluff face and in conformance with the provisions of Title 25, Chapter 102, Erosion Control.
Ordinance § 5 (emphasis added). We shall refer to the first of these variance provisions as a "reasonable use" variance and to the second provision as a "utility facilities" variance.[9]
Following the denial of its building permit for the Ravine Flyer II, Waldameer Park appealed to the Board for a "reasonable use" variance. Waldameer Park offered testimony from a number of witnesses, including owner Paul Nelson, who testified that the setback requirements in the Act and the Ordinance rendered the Property unusable for any purpose other than a rollercoaster. Waldameer Park also offered the testimony of a hydrologist and several engineers regarding the sound land use planning that went into the Ravine Flyer II plan.
Brian Candela appeared at the hearing and objected to the variance. Candela's property lies on the sandy shelf next to Lake Erie. Candela resides there with his wife and sons and operates a campground on an adjacent parcel. Candela testified that the rollercoaster will be unsafe since it will pass within "steps" of his son's bedroom window and his campground, also resulting in an adverse impact on his business. Candela opined that the bluff is unstable and suggested that construction of the rollercoaster will aggravate that situation. Candela cited additional environmental concerns, such as the disruption of eagle nesting areas and a nearby bird sanctuary. Candela offered no evidence in support of his assertions, and no evidence to rebut that offered by Waldameer Park.
The Board granted the variance and permit as requested by Waldameer Park, subject to several conditions.[10] The *340 Candelas appealed to the trial court, which affirmed the Board's decision without hearing additional evidence. The Candelas now appeal to this Court.[11]
The Candelas raise several issues on appeal which may be summarized as follows. They first argue that Waldameer Park failed to offer sufficient evidence to satisfy two of the requirements in the Ordinance for a reasonable use variance: (1) that the Property lacks adequate depth to provide for any reasonable use other than a rollercoaster and (2) that the Ravine Flyer II will be a moveable structure. The Candelas also contend that the Board erred by permitting Waldameer Park to construct portions of the Ravine Flyer II on the slope, or "bluff face," because the Act and the Ordinance prohibit such development.
Before addressing the Candelas' specific issues on appeal, we note that the parties disagree as to whether the Ordinance is, in fact, a zoning ordinance. The Candelas assert that it is, and, accordingly, they challenge the Board's grant of a variance under the terms of the Ordinance as well as under Section 910.2 of the MPC, added by Act of Dec. 21, 1988, P.L. 1329, 53 P.S. § 10910.2.[12] Waldameer Park and the intervening parties[13] counter that the Act is separate and distinct from the MPC, and that the only relevant criteria for a variance are those contained in the pertinent enactments: the Act, the implementing regulations and Section 5 of the Ordinance.
We agree with the Candelas that the Ordinance is a type of zoning ordinance. The Act directs municipalities subject to its terms to create, by ordinance, a special zoning district, i.e., a bluff recession hazard area. The Act also directs municipalities to follow the MPC with respect to the MPC's procedures for adoption and administration of this special zoning ordinance. We agree with Waldameer Park, however, that the standards for a variance contained in Section 910.2 of the MPC are not applicable in the instant case. The Act and the regulations promulgated by the EQB contain their own substantive provisions governing bluff setbacks and variances from those setbacks. These provisions were drafted with regard to the specific purpose of the Act and the peculiar problems associated with development in bluff areas. If the General Assembly had intended that general standards for *341 zoning variances be applied to applications for variances from bluff setbacks, it could have adopted the criteria in Section 910.2 of the MPC by reference, as it did with the administrative aspects of the MPC. It did not, and we interpret this to mean that only those criteria for a variance contained in the Ordinance are applicable in the instant case.
Turning to the specific issues raised by the Candelas before this Court, they first argue that the Board erred in finding that Waldameer Park met the requirements for a reasonable use variance under Section 5(1) of the Ordinance. To summarize those requirements, Waldameer Park had to demonstrate that (1) the park was established prior to bluff recession hazard designation and does not have adequate depth considering the setback requirements to provide for any reasonable use of the land; (2) the Ravine Flyer II and all associated structures will be located as far landward of the bluff line as permitted by other municipal ordinances;[14] and (3) the Ravine Flyer II will be designed and constructed to be moveable.
The Candelas contend that the evidence presented to the Board was insufficient to satisfy the aforementioned requirements. Noting the lack of case law interpreting the Act, the Candelas suggest that cases decided under the MPC should guide our inquiry. We have already determined, however, that the MPC's standards for a variance are inapposite, as are the cases decided under the MPC.
Waldameer Park on the other hand, offered considerable evidence in support of its request for a reasonable use variance. The parcels comprising the park were subdivided and existed in their present configuration prior to being designated as in a bluff recession hazard area. The majority of the largest parcel lies lakeward of the bluff line and is comprised of sloping ground. Paul Nelson, co-owner of Waldameer Park, testified that the land, exclusive of the bluff setback area, is not of sufficient size to support any kind of development. The southern parcels of the park have already been developed with other attractions and service structures that predate the Ordinance. Nelson testified that it would not be economically feasible to remove these structures in order to accommodate the Ravine Flyer II. To do so would also disturb the carefully designed layout of Waldameer Park's existing attractions. The Candelas offered no evidence in rebuttal.
Nelson also testified, with respect to the third variance requirement, that the Ravine Flyer II will be a moveable structure. He analogized a rollercoaster to a "big Tinker Toy set," and cited numerous examples of rollercoasters in other parks that have been disassembled and relocated. R.R. 53a-54a. Lawrence R. Bill, a civil engineer specializing in rollercoaster design, testified that a rollercoaster is a moveable structure and that he had designed the Ravine Flyer II to be moveable. The Candelas claim that the pilings and foundations of the Ravine Flyer II are incapable of being removed; however, they offered no evidence to support their assertion or to rebut the testimony of Waldameer Park's witnesses.
In sum, Waldameer Park offered substantial evidence that (1) the largely undeveloped portions of the park would be rendered unusable by strict application of the setback requirements and (2) that the proposed Ravine Flyer II will be a movable structure. The Candelas offered no rebuttal evidence, and we agree with the Board *342 that Waldameer Park was entitled to its requested variance.[15]
In their final argument, the Candelas argue that the Board erred by sanctioning Waldameer Park's plan to construct supports for the Ravine Flyer II directly on the "bluff face." Here, the "bluff face" is not a straight cliff but a slope that can be traversed on foot without climbing aids. The Candelas characterize the land on the lakeside of the bluff crest as a "negative setback," although the term nowhere appears in the Ordinance.[16] The Candelas also cite to language in the Ordinance requiring an applicant for a variance to "utilize sound land use practices which will reduce disruption of the bluff edge and bluff face." Ordinance § 5(2)(a). However, this section of the Ordinance applies to the utility facility variance not the "reasonable use" type variance at issue here. Nevertheless, the Candelas contend that the Ordinance prohibits bluff face construction in all instances except where the landward structure requires access to the lake. We disagree.
In construing a statute, or in this case an ordinance, this Court must ascertain and give effect to the legislative intention as expressed in the language of the ordinance, and cannot, under its powers of construction, supply omissions in the ordinance, especially where it appears that the matter may have been intentionally omitted. Kusza v. Maximonis, 363 Pa. 479, 482, 70 A.2d 329, 331 (1950). Moreover, because land use regulations are in derogation of the common law and are to be strictly construed in favor of the landowner, this Court will not attach a strained meaning to the words of the ordinance or find a prohibition by implication. Mt. Laurel Racing Association v. Zoning Hearing Board, Municipality of Monroeville, 73 Pa.Cmwlth. 531, 458 A.2d 1043, 1045 (1983); Township of Abington v. Dunkin' Donuts Franchising Corp., 5 Pa. Cmwlth. 399, 291 A.2d 322, 325 (1972).
The Ordinance does not speak to development directly on the bluff face. In this respect the Ordinance is consistent with the Act and its implementing regulations, all of which contain a prohibition against development anywhere except within the minimum bluff setback distance, which, by definition, does not include the area lakeward of the bluff line. The setback requirements are measured from the crest of the bluff landward because this is land subject to erosion. The drafters of the Ordinance directed applicants for a utility facilities variance to minimize disruption of the bluff face; this provision, at most, restricts use of the bluff face.[17] It certainly does not prohibit it. The Board and the trial court did not err in failing to make the extrapolation suggested by the Candelas.
In accordance with the foregoing analysis, we affirm the order of the trial court.

ORDER
AND NOW, this 22nd day of November, 2005, the order of the Court of Common *343 Pleas of Erie County in the above-captioned matter, dated March 21, 2005, is hereby AFFIRMED.
NOTES
[1] Millcreek Township Ordinance, Erie County, PA., No. 81-9 (August 10, 1981).
[2] Peninsula Drive connects the mainland to the peninsula, Presque Isle. The road runs north south until it reaches the base of the peninsula and then turns northeast.
[3] From the top of the slope to the bottom, the difference in elevation is 70 to 80 feet; the slope is not steep or perpendicular, and it does not have a precipitous or overhanging face. It is a relatively gradual incline with an average 29 degree slope and is covered with vegetation. Board Opinion at 13; Finding of Fact No. 57 (F.F.___). The slope can be traversed on foot without climbing aids. Id.; F.F. 58.
[4] Act of May 13, 1980, P.L. 122, 32 P.S. §§ 5201-5215.
[5] A "bluff" is defined as "[a]ny high bank or bold headland with a broad, precipitous cliff face, overlooking a lake." Section 3 of the Act, 32 P.S. § 5203. For purposes of the Act, a "lake" is "[a] body of fresh water covering at least 9,000 square miles." Id.
[6] A "bluff recession hazard area" is defined as "[a]n area or zone where the rate of progressive bluff recession creates a substantial threat to the safety or stability of nearby or future structures or utility facilities." Section 3 of the Act, 32 P.S. § 5203. "Bluff recession" is "[t]he loss of material along the bluff face caused by the direct or indirect action by one or a combination of groundwater seepage, water currents, wind generated water waves or high water levels." Id.
[7] Act of July 31, 1968, P.L. 805, as amended, 53 P.S. §§ 10101-11202.
[8] In June 2001, the Township petitioned the EQB to more specifically identify those areas within the Township that contain bluff recession hazard areas subject to the Act and the regulations. The EQB approved the request and, as directed by the Act, forwarded the matter to the Department for recommendations. To date, the Department has not made its recommendations and the EQB has taken no formal action on the Township's petition. As a result, the parties have stipulated that all bluff areas within the Township, including the Property, are bluff recession hazard areas.
[9] We adopt the nomenclature suggested by the Board for ease of reference. We do so notwithstanding that the variance requested in this case is properly characterized as a dimensional variance rather than a traditional use variance.
[10] For purposes of this appeal, the most important of these conditions is that within one year after operation of the Ravine Flyer II is discontinued, for whatever reason, Waldameer Park is required to dismantle the ride and all of its components, including the track, pilings, caissons and loading platforms, as well as the service road to be constructed at the foot of the bluff. Board Opinion at 32. Waldameer Park is also required to post security in an amount equal to the cost of complying with the foregoing condition. Id. at 33-34. In addition, Waldameer Park's variance is conditioned upon, inter alia, (1) restoring the bluff and the lands surrounding the site to their original condition once construction is completed; (2) limiting traffic on the service road; (3) planting trees as a buffer between the Ravine Flyer II and adjoining properties to the north; and (4) developing a storm water management plan for the site to be approved by the Township's engineer. Id. at 29-30.
[11] Where the trial court receives no additional evidence, our standard of review is to determine whether the Board committed an abuse of discretion or an error of law in granting the variance. Hertzberg v. Zoning Board of Adjustment of City of Pittsburgh, 554 Pa. 249, 256, 721 A.2d 43, 46 (1998). An abuse of discretion will be found only where the zoning board's findings are not supported by substantial evidence. Id. By "substantial evidence" we mean such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id.
[12] For example, the Candelas argue that any hardship to Waldameer Park is self-inflicted and is not unique to the Property.
[13] The intervening parties are (1) Waldameer Park, Inc., Paul T. Nelson, Stephen F. Gorman and Nancy Gorman and (2) Millcreek Township.
[14] There are no Township ordinances, other than the Ordinance at issue here, which would prohibit construction of the Ravine Flyer II at any location on the Property.
[15] We note that the Board took the extra step of requiring Waldameer Park, as a condition for the variance, to tender financial security to the Township in an amount equal to the cost of removing all components of the Ravine Flyer II, including the track, pilings, caissons and loading platforms, in the event that the ride is ever discontinued.
[16] One may argue that the "negative setback" goes to the lake, which could place the Candelas' campground in the "negative setback."
[17] The language in Section 5(2)(a) relied upon by the Candelas implicitly permits some disruption; otherwise, there would be no reason to caution that disruption should be "reduced."