108 Pa. Commonwealth Ct. 113 (1987)
529 A.2d 585
Mitchell Energy Corporation, Appellant
v.
The Zoning Hearing Board of Summerhill Township and Leonard Kreider and John Beebe, Appellees.
Mitchell Energy Corporation, Appellant
v.
The Board of Supervisors of Summerhill Township and Leonard Kreider and John Beebe, Appellees.
Nos. 981 C.D. 1986 and 982 C.D. 1986.
Commonwealth Court of Pennsylvania.
Argued March 24, 1987.
July 30, 1987.
*114 Argued March 24, 1987, before Judges MacPHAIL and DOYLE, and Senior Judge KALISH, sitting as a panel of three.
Paul D. Shafer, Jr., with him, Louis J. Stack, Shafer, Dornhaffer, Swick, Bailey & Irwin, for appellant.
Richard W. Perhacs, Elderkin, Martin, Kelly, Messina & Zamboldi, for appellee, Zoning Board of Summerhill Township.
*115 Joseph A. Yochim, Colussi, Yochim, Skiba & Moore, for appellees, Leonard Kreider and John Beebe.
David L. Hotchkiss, Culbertson, Weiss, Schetroma & Schug, for appellee, Board of Supervisors of Summerhill Township.
OPINION BY JUDGE DOYLE, July 30, 1987:
These consolidated appeals arise out of the attempts by Mitchell Energy Corporation (MEC) to place an injection well in Summerhill Township (Township), Pennsylvania. MEC is a corporation engaged in exploration, drilling and production of oil and natural gas. It operates seventy-nine oil and gas wells in the Township, on land it either owns or leases.
On May 11, 1984, MEC applied for a zoning permit to install an injection well in the Township. An injection well is one used to inject brine into the ground.[1] In this case the well would have been used to inject brine extracted from oil and gas wells operating in the area, with the injection of brine into the ground from this well taking place at depths ranging between 7,286 feet and 7,326 feet and between 7,764 feet and 7,848 feet. At the site of the injection well, there would also be a shed containing pumping equipment, two 42,000-gallon settling tanks and one 4,200-gallon skim oil tank, and a 7,500-gallon concrete pit, on 505 acres MEC owned in the Township. On May 12, 1984, the Township zoning officer denied the permit.
MEC appealed the denial to the Township Zoning Hearing Board (Board). MEC contended in front of the Board that the injection well was a permitted use in an *116 R-1 district under Section 502.13 of the Township Zoning Ordinances.[2] Section 502.13 provides:
Recovery of Subsurface Gas And Oil Deposits. All activities associated with the recovery of subsurface gas and oil deposits are permitted in all zoning districts, except the Flood Hazard Overlay District (in which district they are prohibited), subject to the following requirements.
a. All structures including wellhead casings shall comply with the yard requirements established for the zoning district in which they are located. A zoning permit shall be obtained before any activity is begun at a site.
b. The gas and oil well casing and tank structures normally used in drilling and recovery operations shall be a minimum of 200 feet from any habitable building, whether a residence, a commercial or an institutional building, and shall be a minimum of 100 feet from a stream with year-round flow.
c. The recovery of subsurface gas and oil deposits shall be conducted in such a way that brines, drilling muds and other refuse, which because of its chemical content may be injurious to the natural environment, resulting from the recovery operations shall not be deposited in the natural environment in a manner which would violate the state's Clean Streams and Erosion Control legislation. The township is aware that any enforcement of this provision must be coordinated with PennDER which, in fact, is obliged to handle the enforcement. (Emphasis added.)
*117 On August 21, 1984, the Board, by a 3-2 vote, denied MEC's appeal. The Board interpreted Section 502.13 as extending "no further than the actual extraction of gas and oil" and "not to extend to sanction the permanent storage of waste generated elsewhere." The Board further opined that Section 502.13 may allow the disposal of brine generated by an oil or gas well, but only on the property where the brine is generated.[3] MEC then appealed to the Court of Common Pleas of Crawford County.
Meanwhile, on September 27, 1984, MEC tried to gain municipal approval of the injection well by filing an application with the Township Board of Supervisors (Supervisors) for a conditional use permit under Sections 800[4] and 802[5] of the Township Zoning Ordinance. *118 After a hearing, the Supervisors rejected MEC's application. The Supervisors first held that their power to issue a conditional use permit was limited only to those conditional uses listed in Section 504.2 of the Township *119 Zoning Ordinance.[6] The Supervisors further found that the injection well was not harmonious with the character of the R-1 district and that the well constituted a solid waste disposal facility that did not comply with the *120 provision of the Township Zoning Ordinance[7] regulating such facilities.[8] Accordingly, the Supervisors denied the permit and MEC again appealed to the court of common pleas.
*121 The court consolidated MEC's appeals and rendered its decision without taking additional evidence. The trial court upheld the Board's interpretation of Section 502.13 and ruled that the injection well was not a permitted use in the Township's R-1 district. In the appeal from the denial of the conditional use permit, the court agreed with MEC's contention that Section 800 gives the Supervisors discretion to grant conditional uses beyond those enumerated in Section 504.2, provided that the use is not specifically forbidden by Section 502.9.[9] *122 The court found, however, that the injection well was not harmonious with an R-1 district and that the well constituted a solid waste disposal facility. Since solid waste disposal facilities are permitted as a conditional use in an A-1 (Agricultural) district by the Township Zoning Ordinance, the court found that the use was excluded by implication from the R-1 district. This appeal followed.[10]
MEC's first contention is that an injection well is a permitted use in an R-1 zone because it is one associated with the recovery of natural gas and oil. We agree. In interpreting provisions of a zoning ordinance, undefined terms, such as the word "associated" in this case, must be given their plain, ordinary meaning. Appeal of Mount Laurel Racing Association, 73 Pa. Commonwealth Ct. 531, 458 A.2d 1043 (1983). Webster's Third New International Dictionary defines the term "associate" to mean: "1: closely connected, joined or united with another (as in interest, function, activity, or office); sharing in responsibility or authority. . . . 2: closely related in the mind." Id. at 132 (1961). And it is clear that absent a limiting legislative definition, a term permitting a use must be presumed to have been employed in its broadest sense. R. Anderson, Law of Zoning in Pennsylvania §15.05 (1982). Moreover, words in a zoning ordinance should be given their common meanings, and any doubt should be resolved in favor of the landowner. Abington Township v. Dunkin' Donuts *123 Franchising Corp., 5 Pa. Commonwealth Ct. 399, 291 A.2d 322 (1972). See also Gilden Appeal, 406 Pa. 484, 178 A.2d 562 (1962).
We have also stated that when appropriate definitions are lacking, we will not attach strained meanings to the words used or find a prohibition by implication. Appeal of Mount Laurel Racing Association. Our Supreme Court has recently reaffirmed the principle that, in construing zoning ordinances, to permit the widest use of land is the rule and not the exception, unless the use is specifically restrained in a valid and reasonable exercise of the police power. Council of Middletown Township v. Benham, 514 Pa. 176, 523 A.2d 311 (1987); Fidler v. Zoning Board of Adjustment, 408 Pa. 260, 182 A.2d 692 (1962).
We now turn to the facts of the present case. It is undisputed that brine is a by-product of the recovery of oil and natural gas. Indeed, Section 502.13(c) of the Township Zoning Ordinance acknowledges that brine is a by-product of recovery. Since the production of brine is associated with the recovery of natural gas or oil, a use involving the disposal of such brine is also associated with recovery.
The common pleas court accepted the Board's interpretation that any activity associated with recovery must be confined to the particular property on which the recovery of oil or gas takes place. This interpretation, which would allow multiple injection wells throughout the Township, does not appear to comport with reason or economic reality. The fact that the brine to be injected by this well will be trucked in from other wells in the Township and the surrounding area, rather than being brine from an oil and gas well located on the same piece of property as the injection well, does not somehow make the use one not associated with the recovery of oil or natural gas. We are not unsympathetic *124 to the fact that the injection well might have deleterious ecological effects on the Township; however, the remedy for this situation lies in amending Section 502.13, rather than having us accept the Board's tenuous interpretation of it. Heck v. Zoning Hearing Board for Harveys Lake Borough, 39 Pa. Commonwealth Ct. 570, 574-75, 397 A.2d 15, 18 (1979).
Having decided that an injection well is a permitted use in an R-1 zone in the Township, MEC's appeal of the denial of the conditional use permit, in which MEC sought the same relief as requested here, is now rendered moot.
Based on the foregoing discussion, the order of the Court of Common Pleas of Crawford County affirming the decision of the Summerhill Township Zoning Hearing Board is hereby reversed.

ORDER
NOW, July 30, 1987, the order of Court of Common Pleas of Crawford County, No. A.D. 1984-851, dated March 17, 1986, which upheld the denial of a zoning permit by the Zoning Hearing Board of Summerhill Township, is hereby reversed. It is further ordered that the case docketed in this court at No. 982 C.D. 1986 is hereby dismissed as moot.
NOTES
[1] Brine is a natural by-product of oil and gas drilling. This brine also contains small amounts of the drilling and stimulation fluids that are used as lubricants in the drilling process.
[2] Summerhill Township, Pa., Zoning Ordinance §502.13 (1983).
[3] The Board also ruled that MEC's proposed use did not comply with Section 504.4 of the Township Zoning Ordinance, which requires that any use in the Township's R-1 district have 250 feet of frontage on a public right-of-way. Summerhill Township, Pa., Zoning Ordinance §504.4 (1983). The common pleas court reversed this ruling and, since the Board has not cross-appealed this portion of the common pleas court order, this issue is not presently before us.
[4] Section 800 reads as follows:

Conditional Uses
There are times when decisions as to what particular uses shall or shall not be allowed to locate in a district should be based upon special facts and characteristics peculiar to the specific application. A sample listing of permitted or prohibited uses may be too inflexible to accommodate basically sound development proposals. Where uses are generally consistent with a particular zoning district they should be permitted of right; where uses are generally inconsistent with a particular zoning district they should be prohibited; but a number of decisions on uses fall between these two `extreme' situations. The conditional use is designed to provide some flexibility in locating uses in particular districts; it provides a middle ground between the extremities of `permitted' and `prohibited' uses. The conditional use is much like the special exception use explained in Article 10. except that it is permitted or denied by the Board of Township Supervisors; the Planning Commission has an opportunity to review and make recommendations on conditional use applications. Conditional use proposals may be permitted based upon a review of the particular characteristics they are represented to possess including their size, physical design, method of operation, vehicular circulation requirements and general impact on community facilities.
Summerhill Township, Pa., Zoning Ordinances §800 (1983).
[5] Section 802 enumerates the standards applicable to all conditional uses in the Township and provides as follows:

Standards Applicable To All Conditional Uses
In addition to specific requirements for conditional uses as specified elsewhere in this ordinance the Township shall review the particular facts and circumstances of each proposed conditional use in terms of the following standards and shall permit said use after finding adequate evidence showing that such use at the proposed location:
802.1 Will be in accordance with the community development objectives set forth in Article 2.;
802.2 Will be designed, constructed, operated, and maintained so as to be harmonious and appropriate in appearance and function with the existing or intended character of the general area in which the use is located;
802.3 Will not be hazardous or disturbing to existing or future neighboring uses;
802.4 Will be served adequately by public facilities and services such as highways, streets, police and fire protection, drainage systems, refuse disposal, water and sewers, and schools; and that the persons or agencies responsible for the establishment of the proposed use shall be able to provide additional or supplementary public facilities and services should their need be demonstrated in relation to the proposed use;
802.5 Will not create excessive additional requirements at public cost for public facilities and services and will not be detrimental to the economic welfare of the community;
802.6 Will not involve uses, activities, processes, materials, equipment and conditions of operation that will be detrimental to any persons, property, or the general welfare by reason of excessive production of traffic, noises, vibrations, smoke, dust, fumes, glare or odors; and more specifically the uses shall meet the following standards
a. There shall be no undue pollution of the air by dust, dirt, fumes, smoke or odor which will cause damage to human health or to animals, vegetation or other property or which will soil property and be perceptible beyond the boundary or lot line of the proposed use.
b. There shall be no direct or reflected glare or heat perceptible by the average person beyond the boundary or lot line of the proposed use.
c. There shall be no discernable vibration perceptible without instruments beyond the boundary or lot lines of the proposed use.
d. There shall be no activity permitted which produces radioactivity.
e. There shall be no electrical disturbances adversely affecting the operation of equipment, such as radio and television apparatus, at any point beyond a line 10 feet outside of the boundary or lot lines of the proposed use.
f. There shall be no noise which is normal to the use and which is considered objectionable, because of its volume, frequency or beat, to the average person's sense of hearing perceptible at any point beyond a line 10 feet outside of the boundary or lot lines of the proposed use.
g. There shall be no emissions and/or discharge into the air or water which do not meet the standards established by the Pennsylvania Department of Environmental Resources.
In its review of the application the Board of Township Supervisors may seek the opinion of specialists in the Pennsylvania Department of Environmental Resources or other qualified experts of their choice to advise them regarding compliance with the above listed standards. Any expense associated with obtaining expert advice from such specialists or experts may be charged to the applicant.
802.7 Will not result in the destruction, loss, or damage of a natural, scenic, or historic feature of major importance and significance.
802.8 Will,  when the character of outdoor services, storage, operational and parking activities are such that unsightly views shall be exposed to adjacent uses in such a way as to cause, in the judgment of the reviewing officials, property devaluation,  provide through, minimum distances, screening by wall, fence, plantings and/or terrain or landscape features an effective barrier which blocks said unsightly views to a height of 6 feet, from ground level at the property line with adjacent uses and at road rights-of-way, at the time of occupancy of the use and throughout its future operations. See Section 615, Buffer Areas.
Summerhill Township, Pa., Zoning Ordinance §802 (1983).
[6] Section 504.2 allows the following, subject to other applicable provisions, as conditional uses in an R-1 district:

Conditional Uses. The following uses may be permitted subject to the provisions in Article 8. and subject to any other applicable regulations and standards established in this ordinance.
a. Cluster development; ...
b. Travel trailer park, providing that the development has direct access to a paved public road; ...
c. Mobile home park, providing that the development has direct access to a paved public road; ...
d. Multifamily dwellings, providing that for developments of more than six dwelling units the site has direct access to a paved public road;
e. Tool and die shops and establishments engaged in manufacturing special toolings, fixtures and molds which are used for die castings, foundry casting and plastic working;
f. General automotive repair shops and welding shops providing the work is carried on mainly within a building; outdoor service areas are permitted and shall be reviewed in the conditional use approval process.
Summerhill Township, Pa., Zoning Ordinance §504.2 (1983).
[7] Summerhill Township, Pa., Zoning Ordinance §613 (1983).
[8] The Supervisors found, as had the Board, that the frontage requirement of Section 504.4 had been violated. The common pleas court reversed this finding on appeal and, since the Supervisors have not cross-appealed this determination, this issue is not before us.
[9] Section 502.9 provides as follows:

Prohibited Uses. As provided in the provisions of this ordinance any building may be erected, altered or used for any residence, trade, industry, business or institutional purpose that is in compliance with the applicable district regulations. It is the intention of this ordinance that no uses are established which are obnoxious or offensive by reason of odor, dust, smoke, gas, noise, vibrations, glare or illumination or otherwise create a nuisance or hazard to public health, safety and welfare. In addition to uses which may be prohibited by reasons of the above the following uses are specifically prohibited:
a. The incineration of animal waste
b. Open dumps
c. Paper or paper pulp manufacture
d. Fertilizer manufacture
e. Nuclear waste disposal sites
....
Summerhill Township, Pa., Zoning Ordinance §502.9 (1983).
[10] Our scope of review in a zoning case, where the court of common pleas takes no additional evidence, is limited to determining whether the zoning hearing board committed an abuse of discretion or error of law. Boundary Drive Associates v. Shrewsbury Township Board of Supervisors, 507 Pa. 481, 491 A.2d 86 (1985). Further, a reviewing court may not disturb the findings of fact of the zoning hearing board if the findings are supported by substantial evidence. Id.