# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Clinton Township                    :
                                    :
            v.                      :    No. 920 C.D. 2018
                                    :    Argued: April 9, 2019
The Zoning Hearing Board of         :
Clinton Township and Teen           :
Challenge Training Center, Inc.     :
                                    :
Appeal of: Teen Challenge           :
Training Center, Inc.               :

BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**              **FILED: June 4, 2019**

In this zoning appeal, Teen Challenge Training Center, Inc. (Applicant) asks whether the Court of Common Pleas of the 44th Judicial District, Wyoming County Branch,[1] (trial court) erred in denying its special exception application for its proposed drug and alcohol rehabilitation program. Discerning no error, we affirm.

## I. Background

Applicant owns the property located at 70 Savage Road, Factoryville, Clinton Township (Township), Wyoming County (property). The property is comprised of approximately 36.9 acres, and it lies in a rural agricultural (RA) zoning district. Applicant purchased the property in 2001.

---

[1] The Honorable Russell D. Shurtleff, President Judge, presided.

Applicant is a non-profit corporation, seeking to provide low-cost, faith-based, live-in drug and alcohol rehabilitation and treatment services. From 2001 through 2010, Applicant operated a faith-based rehabilitation program for young adults on the property. Thereafter, it discontinued that program, and it leased the property to Keystone College for student housing.

In 2016, Applicant contacted the Township Zoning Officer, indicating that it was "interested in obtaining approval to restart a rehabilitation program at the property that would service adults." Tr. Ct., Slip Op., 8/15/18, at 4. The Township Zoning Officer "represented that the proposed use of the property as a drug and alcohol treatment center would be prohibited in the [RA district]." Id.

As a result, Applicant filed an application with the Township Zoning Hearing Board (ZHB) for a special exception to use the property as a drug and alcohol treatment center pursuant to Section 404.2 of the Clinton Township-Nicholson Borough Zoning Ordinance (zoning ordinance). That Section, titled, "Uses Not Specified in Schedule of Uses," states, as relevant: "Whenever a use is neither specifically permitted nor specifically denied in any zoning district ... the application shall be submitted to the [ZHB] which shall have the authority to permit the use or deny the use as a special exception." Section 404.2(A) of the zoning ordinance. Thus, Section 404.2 is a type of "catch-all" provision that allows for uses not otherwise addressed in the zoning ordinance, thereby reducing the risk of exclusion of a use by failure to expressly provide for it. Id.

In its application, Applicant described the proposed use of the property as

> a semi-long[-]term faith-based drug and alcohol rehabilitation program which will connect its occupants to the rural setting/nature surrounding the property and conduct an adapted version of the twelve-step program complimented by Bible study and community service. The dwelling unit will provide [a] housing facility for adult persons who need care, treatment and/or counseling for stays in most cases of less than one year.

Tr. Ct., Slip Op., at 4.  Applicant further stated:

> The current zoning ordinance does not specifically permit nor does it specifically deny a treatment center in any of its zoning districts.  Pursuant to [the] zoning ordinance at Section 404.2 … whenever a use is neither specifically permitted nor specifically denied in any zoning district, the matter is heard by the [ZHB].  The [ZHB] should approve the requested use as [a] treatment center because: 1. the use is similar to and compatible with the uses listed for the RA zoning district listed in the schedule of use regulations[;] 2. the use in no way conflicts with the intent of the [z]oning [d]istrict and general lawful purpose(s) and intent of the [z]oning [o]rdinance[;] and 3. the use as a treatment center is not permitted in any other zoning district.

Reproduced Record (R.R.) at 272a.

The ZHB held a hearing on Applicant's special exception application.  At the hearing, the Township stated that the zoning ordinance did, in fact, contain a specific use category that encompassed Applicant's proposed treatment center.  In particular, the Township relied on a 2011 amendment to the zoning ordinance, which amended the definition of the "Health Facilities" use classification.  R.R. at 226a.  According to the Township, the original 2006 zoning ordinance contained a

3

definition for a "Treatment Center/Clinic" use classification, which was separate and distinct from the definition of "Health Facilities." R.R. at 30a, 42a. More particularly, Section 303 of the 2006 zoning ordinance previously defined a "Treatment Center/Clinic" as:

> Treatment Center/Clinic: A use (other than a detention facility or a permitted accessory use in a hospital) providing housing facilities for persons who need specialized housing, treatment and/or counseling for stays in most cases of less than one (1) year and who need such facilities because of:
>
> A. Chronic abuse of or addiction to alcohol and/or a controlled substance, or
>
> B. A type of mental illness or other behavior that could cause a person to be a threat to the physical safety of others.

R.R. at 42a.

In addition, Section 303 of the 2006 zoning ordinance defined "Health Facilities" as:

> Establishments primarily engaged in providing services for human health maintenance including abused person shelters, hospital facilities, nursing homes and adult care facilities, and personal care homes or centers, whether publicly or privately operated, but excluding treatment centers/clinics.

R.R. at 30a.

A 2011 amendment to Section 303 of the zoning ordinance eliminated the separate definition of a "Treatment Center/Clinic." R.R. at 226a. Additionally,

4

it redefined "Health Facilities" as: "Establishments primarily engaged in providing services for human health maintenance including abused person shelters, hospital facilities, nursing homes and adult care facilities, and personal care homes or centers, whether publicly or privately operated." Id. Thus, the 2011 amendment specifically deleted the prior exclusion of treatment centers/clinics from the defined "Health Facilities" use classification. Id.

At the conclusion of the hearing, the ZHB voted to deny the special exception application. The ZHB subsequently prepared a written decision. Although the ZHB's written decision was served on the objectors, it was not served on Applicant. As a result, Applicant filed a complaint in mandamus with the trial court alleging a deemed approval of its special exception application pursuant to Section 908(9) of the Pennsylvania Municipalities Planning Code (MPC).[2] After filing its complaint with the trial court, Applicant's counsel received a document titled "Decision on Application for Special Exception Teen Challenge Training Center, Inc." by email. Tr. Ct., Slip Op., at 6-7.

In response to the ZHB's deemed approval, the Township filed a land use appeal to the trial court, seeking reversal of the deemed approval. The parties agreed that the trial court would conduct de novo review of Applicant's special exception application, and the trial court entered an order to that effect. R.R. at 5a. The trial court also permitted the parties to supplement the record created before the ZHB.

---

[2] Act of July 31, 1968 P.L. 805, as amended, 53 P.S. §10908(9).

Thereafter, the trial court issued an opinion and order in which it granted the Township's land use appeal and denied Applicant's special exception application. In its opinion, the trial court explained that the crux of this case involved the scope of the definition of the term "Health Facilities." Tr. Ct., Slip Op., at 7. In resolving that issue, the trial court reviewed case law from this Court regarding the handling of treatment facilities under various zoning ordinances, see THW Group, LLC v. Zoning Board of Adjustment, 86 A.3d 330 (Pa. Cmwlth. 2014); Freedom Healthcare Services, Inc. v. Zoning Hearing Board of City of New Castle, 983 A.2d 1286 (Pa. Cmwlth. 2009); and Diversified Health Associates, Inc. v. Zoning Hearing Board of Borough of Norristown, 781 A.2d 244 (Pa. Cmwlth. 2001), as well as case law regarding the principles used in interpreting zoning ordinances. See Slice of Life, LLC v. Hamilton Twp. Zoning Hearing Bd., 164 A.3d 633 (Pa. Cmwlth. 2017), appeal granted, 180 A.3d 367 (Pa. 2018).

Ultimately, the trial court held that Applicant's proposed drug and alcohol treatment facility fell within the zoning ordinance's definition of "Health Facilities," a use permitted in certain zoning districts in the Township, but not in the RA district in which the property lies. Tr. Ct., Slip Op., at 10. Thus, the trial court denied Applicant's application for a special exception under Section 404.2(A) of the zoning ordinance, which permits the ZHB to grant or deny a special exception application where the use at issue is "neither specifically permitted nor specifically denied in any zoning district[.]" Id. (emphasis added).

Applicant appealed to this Court, and the trial court directed it to file a concise statement of the errors complained of on appeal pursuant to Pa. R.A.P.

1925(b), which it did. The trial court then issued a brief opinion pursuant to Pa. R.A.P. 1925(a), in which it explained that the basis for its decision was set forth in its prior opinion.

## II. Issue

On appeal,[3] Applicant argues that it may apply for a special exception as a "Treatment Center/Clinic" pursuant to Section 404.2 of the zoning ordinance because a "Treatment Center/Clinic" is not included in the definition of "Health Facilities" and is a land use that is neither specifically permitted nor specifically denied in any zoning district. Appellant's Br. at 2.

## III. Discussion
## A. Contentions

Applicant argues the trial court erred in failing to apply the principles of statutory construction and the rule set forth in Velocity Express v. Pennsylvania Human Relations Commission, 853 A.2d 1182 (Pa. Cmwlth. 2004), in interpreting the definition of "Health Facilities" in Section 303 of the zoning ordinance. Applicant asserts the zoning ordinance defines "Health Facilities" as: "Establishments primarily engaged in providing services for human health maintenance including abused person shelters, hospital facilities, nursing homes and adult care facilities, and personal care homes or centers, whether publicly or privately operated." R.R. at 226a. Applicant points out that each enumerated

---

[3] When a trial court takes additional evidence on the merits, this Court reviews the trial court's findings of fact and conclusions of law for abuse of discretion or errors of law. Newtown Square East, L.P. v. Twp. of Newtown, 38 A.3d 1008 (Pa. Cmwlth. 2011), aff'd, 101 A.3d 37 (Pa. 2014).

example in this definition is separately defined in Section 303 of the zoning ordinance.

Because the definition of "Health Facilities" contains the word "including," Applicant asserts, the zoning ordinance is ambiguous as a matter of law. Appellant's Br. at 5 (citing Velocity Express). Applicant contends this Court may consider that the definition could include additional land uses not expressly enumerated in the definition; however, those additional land uses not expressly enumerated would need to be of the same class or type as those expressly enumerated. Because a "Treatment Center/Clinic" is not of the same type or class as those land uses expressly enumerated, Applicant argues, it cannot be included in the definition of "Health Facilities." Appellant's Br. at 5-6. Applicant asserts that, if a "Treatment Center/Clinic" is not included in the definition of "Health Facilities," it is a use that is *not* specified in the schedule of uses in the zoning ordinance. Appellant's Br. at 6. As a result, Applicant contends, it was permitted to apply for a special exception for a "Treatment Center/Clinic" under Section 404.2 of the zoning ordinance. Id.

Applicant maintains its proffered interpretation of the definition of "Health Facilities" is consistent with the principles of statutory construction and the interpretation of zoning ordinances, including showing deference to the word choices and definitions of the legislative body, Sterling v. City of Philadelphia, 106 A.2d 793 (Pa. 1954); Westbrook v. Robbins, 611 A.2d 749 (Pa. Super. 1992), applying the principle that any ambiguity in a zoning ordinance should be construed in favor of the landowner, Riverfront Development Group, LLC v. City

8

of Harrisburg Zoning Hearing Board, 109 A.3d 358 (Pa. Cmwlth. 2015), interpreting the zoning ordinance consistently and as a whole, Mt. Laurel Racing Association v. Zoning Hearing Board, Municipality of Monroeville, 458 A.2d 1043 (Pa. Cmwlth. 1983), and giving meaning to all of its parts, George v. Moore, 147 A.2d 148 (Pa. 1959). Appellant's Br. at 6.

Applicant further argues the trial court erred in relying on THW Group, Freedom Healthcare, and Diversified Health, and holding these cases controlled the interpretation of the zoning ordinance here. It asserts the trial court erred in failing to analyze and interpret the language of the zoning ordinance in accordance with statutory construction principles. Applicant contends the zoning ordinance here is distinguishable from the ordinances in THW Group, Freedom Healthcare, and Diversified Health. Further, it argues Freedom Healthcare involved an interpretation of the term "medical clinic," and it contends, ironically, the zoning ordinance here permits a "medical clinic" in the RA district, so that if Applicant's proposed treatment center is classified as a "medical clinic" it may be permitted by right. Appellant's Br. at 7.[4]

Applicant maintains that the expressly enumerated uses in the zoning ordinance's definition of "Health Facilities" can be grouped into four classifications: (1) abused persons shelters; (2) hospitals; (3) nursing homes/adult care facilities (as the relevant zoning ordinance definitions for these two uses are identical); and (4) personal care homes or centers. Appellant's Br. at 13.

---

[4] Applicant notes that, although a "medical clinic" is a permitted use in the RA district, it is considered a conditional use if it is located within 300 feet of any neighboring parcel with an existing residential dwelling. Appellant's Br. at 7 n.2.

9

Applicant sets forth the zoning ordinance's definitions of each of these uses, and it asserts, based on a review of these definitions, it is apparent that all of these uses are similar to one another.

Applying the holding of Velocity Express, Applicant maintains, if the additional "Treatment Center/Clinic" use is to be included in the definition of "establishments primarily engaged in providing services for human health maintenance" along with the other expressly enumerated uses, a "Treatment Center/Clinic" must be of the same class or type as any one of the other uses that are expressly enumerated. Appellant's Br. at 15. Thus, Applicant argues, it is necessary to consider the definition of "Treatment Center/Clinic." Id. It asserts the term "Treatment Center/Clinic" is not *currently* defined in the zoning ordinance because the definition was deleted by the 2011 amendment. Id. However, Applicant contends, because the local governing body previously defined "Treatment Center/Clinic," it understood the meaning of that term. Id. Thus, Applicant argues the "best evidence" of the local governing body's intent in classifying a "Treatment Center/Clinic" is found in its own definition prior to deletion in 2011. Id.

Based on that *prior* definition, Applicant asserts, a "Treatment Center/Clinic" can be classified as temporary residential uses for persons of all ages receiving treatment for an addiction to a substance, for a mental illness, or other behavior. R.R. at 42a. It argues that, comparing the "Treatment Center/Clinic" definition with the definitions of the other uses enumerated in the "Health Facilities" definition, reveals a "Treatment Center/Clinic" is not of the

10

same class of uses as those enumerated. Appellant's Br. at 16-17. Therefore, Applicant contends a "Treatment Center/Clinic" does not fall within the definition of "Health Facilities" under the zoning ordinance. Appellant's Br. at 17.

In seeking to classify a "Treatment Center/Clinic" as a "Health Facility," Applicant maintains, the trial court appeared to afford weight to the testimony of Applicant's representative that Applicant is involved in the practice of "human health maintenance." Appellant's Br. at 18. Applicant asserts there are many uses listed in the zoning ordinance that could arguably be classified as uses that include establishments primarily engaged in the provision of services for human health maintenance if the common dictionary definitions of those terms are used. It contends these uses are: "Adult Day Care," "Child Day Care," "Group Home," "Therapeutic Massage Facility," "Medical Clinic," and "Recreational Facilities." Id. Applicant maintains that if a representative of any of these establishments was asked if his organization's use was "an establishment primarily engaged in providing services for human health maintenance" he would likely respond in the affirmative, as did Reverend Joel Jakubowski, who testified on behalf of Applicant here. Id.

Applicant argues the "Medical Clinic" use category is an instructive example because a "Medical Clinic" is obviously "an establishment primarily engaged in providing services for human health maintenance." Id. However, Applicant asserts, "Medical Clinics" are not included in the definition of "Health Facilities," and they are treated differently than "Health Facilities" under the zoning ordinance. Appellant's Br. at 18-19. Thus, Applicant contends, it is

11

apparent that the local governing body chose to specifically define "Health Facilities" in the manner it did. Appellant's Br. at 19.

Applicant maintains that this Court must assume that the local governing body did not intend to classify every "establishment primarily engaged in providing services for human health maintenance" as a "Health Facilit[y]." Id. It argues that if the local governing body chose not to define "Health Facilities" as including an "Adult Day Care," a "Child Day Care," a "Group Home," a "Therapeutic Massage Facility," "Recreational Facilities," or even a "Medical Clinic," the local governing body understood and intended a very particularized group of uses to embody the definition of "Health Facilities." Id. It argues the local governing body did not intend "Health Facilities" to be an all-encompassing definition for the majority of establishments primarily engaged in human health maintenance. Id. Otherwise, Applicant asserts, many additional uses, of which the local governing body was aware and specifically defined in the zoning ordinance, would have been included in the definition.

For these reasons, Applicant contends, a "Treatment Center/Clinic" cannot be included in the definition of "Health Facilities." Id. It maintains Section 404.2 of the zoning ordinance is implicated because a "Treatment Center/Clinic" is a use not specified in the schedule of uses. Id. As such, Applicant argues, the trial court erred when it denied Applicant's special exception on the basis that its "Treatment Center/Clinic" was included within the definition of "Health Facilities." Id. at 20.

12

## B. Analysis

The issue raised by Applicant is whether the trial court erred in determining that Applicant's proposed "semi-long[-]term faith[-]based drug and alcohol rehabilitation program" falls within the zoning ordinance's definition of "Health Facilities," and, therefore, is not permitted in the RA district in which the property lies. R.R. at 271a.

This issue poses a question of statutory construction, to which our review is plenary. Malt Beverages Distribs. Ass'n v. Pa. Liquor Control Bd., 918 A.2d 171 (Pa. Cmwlth. 2007) (en banc), aff'd, 974 A.2d 1144 (Pa. 2009). Like statutes, the primary objective in interpreting ordinances is to determine the intent of the legislative body that enacted the ordinance. See 1 Pa. C.S. §1921; Bailey v. Zoning Bd. of Adjustment of City of Phila., 801 A.2d 492 (Pa. 2002); Malt Beverages Distribs. In pursuing that end, we are mindful that an ordinance's plain language generally provides the best indication of legislative intent. Malt Beverages Distribs. Thus, ordinance construction begins with examination of the text itself. Id.

In reading the plain language of an ordinance, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa. C.S. §1903(a). Further, every ordinance shall be construed, if possible, to give effect to all its provisions so that no provision is "mere surplusage." 1 Pa. C.S. §1921(a). Where the words of an ordinance are free from all ambiguity, the letter of the ordinance may not be disregarded under the pretext of pursuing its spirit. 1 Pa. C.S. §1921; see also 1 Pa. C.S. §1903.

13

Thus, if we determine the ordinance is unambiguous, we must apply it directly as written. Bowman v. Sunoco, Inc., 65 A.3d 901 (Pa. 2013); see 1 Pa. C.S. §1921(b). However, if we deem the language of the ordinance ambiguous, we must then ascertain the legislative body's intent by statutory analysis, wherein we may consider numerous relevant factors. Id. An ambiguity exists when language is subject to two or more reasonable interpretations and not merely because two conflicting interpretations are suggested. Adams Outdoor Adver., L.P. v. Zoning Hearing Bd. of Smithfield Twp., 909 A.2d 469 (Pa. Cmwlth. 2006).

In addition, where a court needs to define an undefined term, it may consult dictionary definitions for guidance, although such definitions are not controlling. Id.

Here, in determining that Applicant's proposed use falls within the defined "Health Facilities" use classification in the zoning ordinance, the trial court explained (with emphasis added):

> During the hearing on [Applicant's] [s]pecial [e]xception [application], Reverend Joel Jakubowski testified on behalf of [Applicant] that the nature of the proposed facilities was 'a long-term residential, faith-based drug and alcohol treatment program that incorporates … continual care that includes counseling, classroom settings, psycho education [sic], work therapy, relationship building, [and] family dynamic reconstruction.' [ZHB Hearing, Notes of Testimony (N.T.), 6/27/17, at 4]. [Applicant] currently has four facilities in [Pennsylvania] that are licensed as … 'residential [d]rug and [a]lcohol [t]reatment [c]enter[s][.]' [N.T. at 18]. The facility at issue, if approved, would likely also be licensed … as a [r]esidential [d]rug and [a]lcohol [t]reatment [c]enter.

14

[Id.] A fee is charged for services provided at the proposed facility. [N.T. at 23]. Medicare is accepted as payment and is generally approved. [N.T. at 23-24]. [Applicant] accepts private insurance. [N.T. at 25]. Patients must meet the Pennsylvania Client Placement Criteria to be admitted. [N.T. at 26]. Reverend Jakubowski stated that the program concerns human health maintenance and his description of the proposed facility fit squarely within the [z]oning [o]rdinance[']s definition of a 'Health Facility[.]' [N.T. at 27].

In the instant case, the legislative body of the municipality, the [Township] Supervisors, possess[es] the authority to propagate legislative acts and … zoning ordinances are just that – legislative acts. Here, the [Township] Supervisors enacted an amendment to the zoning ordinance in 2011 when [they] eliminated language from the term ['Health Facilities,'] which previously excluded treatment centers. It is clear from the definition contained in the [z]oning [o]rdinance at issue and the case law set forth above that the term 'Health Facilities' includes treatment facilities such as the one set forth in [Applicant's] [a]pplication for [s]pecial [e]xception. And while this type of use [is permitted] in the Township, it [is not permitted] in the [RA district] where [the] property [lies]. As such, … [Applicant's] application [for] [s]pecial [e]xception under Section 404.2 of the [z]oning [o]rdinance is denied.

Tr. Ct., Slip Op., 9-10. No error is apparent in the trial court's interpretation of the zoning ordinance.

To that end, the plain language of Section 303 of the zoning ordinance defines "Health Facilities" as: "Establishments primarily engaged in providing services for human health maintenance including abused person shelters, hospital facilities, nursing homes and adult care facilities, and personal care homes or centers, whether publicly or privately operated." R.R. at 226a (emphasis added).

15

While the zoning ordinance does not define the terms "health" or "maintenance," the dictionary defines "health" as "the condition of being sound in body, mind, or spirit; *esp* : freedom from physical disease or pain," and "maintenance" as "the act of maintaining : the state of being maintained : support[.]" MERRIAM–WEBSTER'S COLLEGIATE DICTIONARY 534, 700 (10th ed. 2001), respectively. In light of the trial court's supported determinations, which are based on the testimony of Applicant's witness, Reverend Joel Jakubowski, R.R. at 277a-78a, 291a, 296a-300a, it is clear that Applicant's proposed residential drug and alcohol treatment facility is an establishment "primarily engaged in providing services for human health maintenance." R.R. at 226a.

Nevertheless, Applicant argues the use of the term "including" preceding the list of enumerated examples of "Health Facilities" renders the definition ambiguous. Contrary to Applicant's assertions, the zoning ordinance's definition of "Health Facilities" is not ambiguous. Rather, *prior to setting forth the enumerated examples*, the zoning ordinance defines "Health Facilities" as "[e]stablishments primarily engaged in providing services for human health maintenance …." R.R. at 226a. We agree with the trial court that Applicant's proposed drug and alcohol treatment facility falls within this unambiguous plain language. Further, contrary to Applicant's assertions, as we explained in Tri-County Landfill, Inc. v. Pine Township Zoning Hearing Board, 83 A.3d 488 (Pa. Cmwlth. 2014), the fact that an ordinance uses words such as "including but not limited to" followed by several enumerated examples, which do not include the specific item at issue, does not "automatically" render the ordinance ambiguous. Id. at 512 (citing Dechert, LLP v. Commonwealth, 998 A.2d 575, 582 (Pa. 2010)).

16

Moreover, our Supreme Court explains, "the term 'include' is 'to be dealt with as a word of 'enlargement and not limitation' …." Dechert, 998 A.2d at 580 (quoting Pa. Human Relations Comm'n v. Alto-Reste Park Cemetery Ass'n, 306 A.2d 881, 885 (Pa. 1973)); see also Readinger v. Workers' Comp. Appeal Bd. (Epler Masonry), 855 A.2d 952 (Pa. Cmwlth. 2004); BLACK'S LAW DICTIONARY 777 (8th ed. 2004) (use of term "including" typically indicates a partial list). Thus, the fact that the definition of "Health Facilities" contains a non-exhaustive list of examples or types of such facilities, which does not specifically include treatment centers/clinics, does not render it ambiguous. Tri-County.

Further, as our Supreme Court explained in Department of Environmental Protection v. Cumberland Coal Resources, L.P., 102 A.3d 962 (Pa. Cmwlth. 2014):

> [I]t is widely accepted that general expressions such as 'including,' or 'including but not limited to,' that precede a specific list of included items are to be considered as words of enlargement and not limitation. Indeed, such a list of specific items is not meant to be exclusive of all items other than those specifically named. Yet, these terms also should not be construed in their widest context. Under our venerable statutory construction doctrine of *ejusdem generis* ('of the same kind or class'), where specific terms setting forth enumeration of particular classes of persons or things follow general terms, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated. In sum, <u>the presence of such a term as 'including' in a definition exhibits a legislative intent that the list that follows is not an exhaustive list of items that fall within the definition; yet, any additional matters purportedly falling within the definition, but that are not express, must be similar to those listed by the legislature and of the same general class or nature</u>.

17

Id. at 966 (emphasis added) (citations omitted).

Here, the following use classifications appear after the term "including" in the "Health Facilities" definition: "abused person shelters," "hospital facilities," "nursing homes and adult care facilities," and "personal care homes or centers." R.R. at 226a. Section 303 of the zoning ordinance defines these uses as follows:

> Abused Person Shelter: A non-profit residential use in which rooms are provided to serve as a temporary safe and supportive environment for persons who, because of actual or threatened physical or mental abuse, are forced to leave their previous living arrangement. Such facilities shall be designed to provide in-house living for persons only until a safe, permanent living arrangement can be obtained.
>
> * * * *
>
> Adult Care Facility: See *nursing home*.
>
> * * * *
>
> Hospital: An institution providing primary health services and medical or surgical care to persons, primarily inpatients, suffering from illness, disease, injury, deformity and other abnormal physical or mental conditions, and including, as an integral part of the institution, related facilities such as laboratories, outpatient facilities or training facilities. Considered a *health facility* for the purposes of this [z]oning [o]rdinance.
>
> Nursing Home: A facility licensed by the State for the housing and intermediate or fully-skilled nursing care of three (3) or more persons needing such care because of old age or a physical illness or disability or a developmental disability.

18

> Personal Care Home or Center: A residential use providing residential and support services primarily to persons who are over age sixty (60), and/or physically handicapped and/or the developmentally disabled and that is licensed as a Personal Care Center by the Commonwealth of Pennsylvania. Considered a *nursing home* for the purposes of this [z]oning [o]rdinance.

R.R. at 19a-20a, 226a.

Our review of these use classifications reveals that four of the five of the specifically enumerated "Health Facilities" include a residential component, and all five enumerated examples contemplate some form of assistance or treatment to individuals in need. Similar to those enumerated uses, Applicant's proposed drug and alcohol treatment facility contains a residential component as well as various forms of assistance or treatment, including "counseling, classroom settings, psycho education [sic], work therapy, relationship building, [and] family dynamic reconstruction[.]" R.R. at 277a-78a. As such, even if we apply the doctrine of *ejusdem generis*, we conclude Applicant's proposed use is similar to those uses listed by the local governing body and of the same general class or nature as those enumerated uses. Such an interpretation is not tantamount to categorizing the "Health Facilities" definition as "all encompassing" or a "catch-all" use classification as Applicant suggests. Appellant's Br. at 19.[5]

---

[5] To that end, Applicant asserts there are many uses in the zoning ordinance that could arguably be classified as establishments primarily engaged in the provision of services for human health maintenance if the common dictionary definitions of the terms human health maintenance are employed. It contends these uses are: "Adult Day Care," "Child Day Care," "Group Home," "Therapeutic Massage Facility," "Medical Clinic," and "Recreational Facilities." Appellant's Br. at 18. Contrary to Applicant's assertions, the zoning ordinance separately and specifically defines each of these use classifications and provides for specific zoning districts in which each **(Footnote continued on next page…)**

Additional support for our conclusion that a treatment center or clinic falls within the "Health Facilities" use category is found in the fact that Section 303 of the *prior* (2006) version of the zoning ordinance defined "Health Facilities" as: "Establishments primarily engaged in providing services for human health maintenance including abused person shelters, hospital facilities, nursing homes and adult care facilities, and personal care homes or centers, whether publicly or privately operated, but excluding treatment centers/clinics." R.R. at 30a (Emphasis added.) The 2011 amendment to the zoning ordinance specifically deleted the exclusion of "treatment centers/clinics" from the definition of "Health Facilities" as well as the prior definition of "Treatment Centers/Clinics." R.R. at 226a. Thus, to the extent it is necessary to discern legislative intent, the local governing body's specific deletion of the exclusion of treatment centers/clinics from the definition of "Health Facilities" indicates the local governing body did not intend to exclude such uses from that definition under the current zoning ordinance. See 1 Pa. C.S. §1921(c)(5) ("When the words of the statute are not explicit, the intention of the [legislative body] may be ascertained by considering, among other matters …. [t]he former law, if any, including other statutes upon the same or similar subjects.") (Emphasis added.)

---

**(continued…)**

of these uses are permitted. Unlike the uses referenced by Applicant, the zoning ordinance contains no definition of a "Treatment Center/Clinic" and, as set forth below, the 2011 amendment to the zoning ordinance specifically deleted the exclusion of a "Treatment Center/Clinic" from the definition of "Health Facilities." Reproduced Record at 226a.

20

Moreover, Velocity Express, relied on by Applicant, does not compel a different result. There, we considered whether an individual was entitled to any protection or remedy under the Pennsylvania Human Relations Act[6] (PHRA) as an independent contractor. The PHRA contains a specific definition of the term "independent contractor," which is limited to independent contractors who are in professions or occupations regulated by the Bureau of Professional and Occupational Affairs or those who are included in the Fair Housing Act, 42 U.S.C. §§3601-3631. Id. at 1185. We determined that the use of the term "includes" in the PHRA's definition of the term "independent contractor" was ambiguous because it could be interpreted as a word of enlargement *or* limitation. Id. Thus, we examined the General Assembly's intent in enacting the PHRA to determine whether the term "includes" was intended as a word of enlargement or limitation. Id. at 1185-86. Relying on the doctrine of *ejusdem generis*, we explained that the term "includes" in the definition at issue preceded a specific list, *i.e.*, independent contractors who are in professions or occupations regulated by the Bureau of Professional and Occupational Affairs or those who are included in the Fair Housing Act. Id. at 1186. Because the occupation of the individual at issue fell outside both of these classifications, we held the individual was not an "independent contractor" under the PHRA. Id. We further explained that our interpretation was consistent with guidance on the Pennsylvania Human Relations Commission's website as well as the General Assembly's use of the term "includes" throughout the PHRA. Id. at 1186-87.

---

[6] Act of October 27, 1955, P.L. 744, as amended, 43 P.S. §§951-963.

21

We reject Applicant's reliance on <u>Velocity Express</u> for several reasons. First, unlike <u>Velocity Express</u>, the case presently before us does not involve an interpretation of the PHRA. Thus, our analysis in that case is not instructive here. Further, unlike the more restrictive "independent contractor" definition at issue there, the "Health Facilities" definition at issue here is broad and unambiguous. R.R. at 226a. Additionally, as explained above, even if we apply the doctrine of *ejusdem generis* here, as we did in <u>Velocity Express</u>, Applicant's proposed residential drug and alcohol treatment facility falls within the "Health Facilities" definition because Applicant's proposed use is similar to the uses listed and of the same general class or nature as those enumerated uses. R.R. at 226a.

In addition, Applicant appears to suggest that its proposed treatment center may be classified as a "Medical Clinic," which is permitted by right in the RA district, if the proposed use is not located within 300 feet of any neighboring parcel with an existing residential dwelling (otherwise conditional use approval is required). R.R. at 48a. Aside from the fact that Applicant did not seek relief on this basis in its application to the ZHB, R.R. at 270a-73a, and the fact that Applicant offers no explanation as to whether conditional use approval would be required here, contrary to Applicant's assertions, the zoning ordinance defines a "Medical Clinic" as: "An establishment where patients are admitted for examination and treatment by one or more physicians, dentists, psychologists or social workers <u>and where patients are not usually overnight</u>." R.R. at 34a. Here, Applicant's witness testified that Applicant's program is "traditionally a <u>long-term residential</u> … treatment program" and individuals can remain at Applicant's proposed treatment facility for "<u>up to six months</u>." R.R. at 277a, 282a (emphasis

22

added). Thus, Applicant's proposed use does not fall within the "Medical Clinic" use classification, which does not contemplate usual overnight stays by patients. R.R. at 34a.

Finally, Applicant relies on the rule of construction that, in interpreting the language of zoning ordinances to determine the extent of the restriction on the use of property, the language shall be interpreted, where doubt exists as to the intended meaning of the language, in favor of the landowner. Section 603.1 of the MPC.[7] However, "[w]hile it is undeniable that we are to interpret <u>ambiguous</u> language in an ordinance in favor of the property owner and against any implied extension of the restriction, <u>such a restrictive reading of an ordinance is unwarranted where 'the words of the zoning ordinance are clear and free from any ambiguity</u>.'" <u>City of Hope v. Sadsbury Twp. Zoning Hearing Bd.</u>, 890 A.2d 1137, 1143 (Pa. Cmwlth. 2006) (quoting <u>Isaacs v. Wilkes-Barre City Zoning Hearing Bd.</u>, 612 A.2d 559, 561 (Pa. Cmwlth. 1992)) (emphasis added). Thus, "[w]hile it is true that zoning ordinances are to be liberally construed to allow the broadest possible use of land, it is also true that zoning ordinances are to be construed in accordance with the plain and ordinary meaning of their words." <u>Tri-County</u>, 83 A.3d at 510 (quoting <u>Zappala Grp., Inc. v. Zoning Hearing Bd. of Town of McCandless</u>, 810 A.2d 708, 710 (Pa. Cmwlth. 2002)). As explained above, we reject Applicant's arguments that the language of the "Health Facilities" definition is ambiguous; therefore, this rule of construction does not apply here. <u>Id.</u>

---

[7] Section 603.1 of the MPC was added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10603.1.

23

## IV. Conclusion

While the proposed use is commendable, we discern no error in the trial court's determination that Applicant's proposed drug and alcohol treatment center falls within the plain meaning of the zoning ordinance's definition of "Health Facilities," <u>see</u> Section 303 of the zoning ordinance, which are permitted by conditional use in the commercial-industrial districts in the Township and by special exception in the business districts in Nicholson Borough. R.R. at 49a, 54a. As such, the trial court properly determined that Applicant is not entitled to a special exception under Section 404.2(A) of the zoning ordinance ("Whenever a use <u>is neither specifically permitted nor specifically denied in any zoning district established under this [o]rdinance</u> and an application is made to the [z]oning [o]fficer for such use, the application shall be submitted to the [ZHB] which shall have the authority to permit the use or deny the use as a special exception.") (Emphasis added). Accordingly, we affirm the trial court's order.

ROBERT SIMPSON, Judge

24

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Clinton Township | : | |
| | : | |
| v. | : | No. 920 C.D. 2018 |
| | : | |
| The Zoning Hearing Board of | : | |
| Clinton Township and Teen | : | |
| Challenge Training Center, Inc. | : | |
| | : | |
| Appeal of: Teen Challenge | : | |
| Training Center, Inc. | : | |

# **O R D E R**

**AND NOW**, this 4th day of June, 2019, the order of the Court of Common Pleas of the 44th Judicial District, Wyoming County Branch, is **AFFIRMED**.

_____
ROBERT SIMPSON, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Clinton Township | : | |
| | : | No. 920 C.D. 2018 |
| v. | : | |
| | : | Argued: April 9, 2019 |
| The Zoning Hearing Board of | : | |
| Clinton Township and Teen | : | |
| Challenge Training Center, Inc. | : | |
| | : | |
| Appeal of: Teen Challenge | : | |
| Training Center, Inc. | : | |

BEFORE:    HONORABLE ROBERT SIMPSON, Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## ***OPINION NOT REPORTED***

DISSENTING OPINION
BY JUDGE McCULLOUGH                            FILED: June 4, 2019


I must respectfully dissent from the well-reasoned Majority opinion because I do not agree that the use proposed by Teen Challenge Training Center, Inc. (Applicant), set forth in its application for a special exception, falls within Clinton Township-Nicholson Borough (Township)'s Zoning Ordinance (Ordinance) definition of "Health Facilities." In 2011, section 303 of the Ordinance was amended to specifically remove any reference to treatment centers/clinics from the definition of "Health Facilities." Where section 303 of the

2006 Ordinance separately set forth a definition of "Treatment Centers/Clinics,"[1] the 2011 amendment eliminated that definition entirely and, significantly, deleted the phrase "but excluding treatment centers/clinics" from the definition of "Health Facilities."[2]  (R.R. at 226a.)

---

[1] As noted in the Majority opinion, the definition of "Treatment Centers/Clinics" was as follows:

> Treatment Centers/Clinics: A use (other than a detention facility or a permitted accessory use in a hospital) providing housing facilities for persons who need specialized housing, treatment and/or counseling for stays in most cases of less than one (1) year and who need such facilities because of:
> A. Chronic abuse of or addiction to alcohol and/or a controlled substance, or
> B. A type of mental illness or other behavior that could cause a person to be a threat to the physical safety of others.

(Reproduced Record (R.R.) at 42a.)

[2] The 2006 Ordinance defined "Health Facilities" as,

> Establishments primarily engaged in providing services for human health maintenance including abused person shelters, hospital facilities, nursing homes and adult care facilities, and personal care homes or centers, whether publicly or privately operated, **but excluding treatment centers/clinics**.

(R.R. at 30a) (emphasis added).  As noted, the definition of "Health Facilities" after the 2011 amendment differed from the 2006 Ordinance only to the extent that it did not contain the phrase "but excluding treatment centers/clinics":

> Establishments primarily engaged in providing services for human health maintenance including abused person shelters, hospital facilities, nursing homes and adult care facilities, and personal care homes or centers, whether publicly or privately operated.

(R.R. at 226a.)

PAM-2

Therefore, Applicant is correct that the term "Treatment Center/Clinic" is presently neither permitted nor excluded from the definition of "Health Facilities." Because Applicant's proposed use does not qualify as a "Health Facility," and because it is not provided for elsewhere within the Ordinance, it is a use "neither specifically permitted nor specifically denied in any zoning district." (Trial court op. at 4.) Hence, Applicant correctly proceeded under section 404.2 of the Ordinance, a "catch-all" provision entitled, "Uses Not Specified in Schedule of Uses," which allows a party to submit an application for a use not otherwise specified in the Ordinance to the Zoning Hearing Board for approval. *Id.*

Despite the explicit deletion of any reference to treatment centers/clinics from the "Health Facilities" definition, the Majority would hold that Applicant's proposed treatment center/clinic nonetheless falls under that definition and, because health facilities are not permitted in the rural agricultural district where Applicant's property sits, its application was correctly denied. However, such an approach ignores that if the Township wished to include treatment centers within the definition of "Health Facilities," it could have done so by changing the phrase "but excluding treatment centers/clinics" to "and including treatment centers/clinics" in the 2011 amendment to the Ordinance. Instead, the Township chose to delete all reference to treatment centers/clinics from the "Health Facilities" definition thus qualifying them as a use not otherwise specified in the Ordinance.

Accordingly, I must respectfully dissent as I would reverse the order of the Court of Common Pleas of the 44th Judicial District, Wyoming County

Branch and remand for consideration of Applicant's application for special exception pursuant to the section 404.2 "catch-all" provision of the Ordinance.

_____

PATRICIA A. McCULLOUGH, Judge